UNITED STATES of America, Appellee,

v.

Neal ELEFANT, Defendant–Appellant.

No. 1764, Docket 93–1176.

United States Court of Appeals,
Second Circuit.

Argued June 24, 1993.

Decided July 27, 1993.

Nathan Lewin, Washington, DC (Ellen Fels Berkman, Miller, Cassidy, Larroca & Lewin, Washington, DC, Dennis Rappa, New York City (on the brief), for defendant-appellant.

Sarah N. Chapman, Asst. U.S. Atty., New York City (Roger S. Hayes, U.S. Atty., Nelson W. Cuningham, Asst. U.S. Atty., on the brief), for appellee.

Before: NEWMAN, Chief Judge, LUMBARD and PRATT, Circuit Judges.

JON O. NEWMAN, Chief Judge:

This appeal is a sad tale of high moral teachings gone awry. A devout Jew, employed by the FBI as a translator of wiretapped conversations in a sensitive investigation of a major money-laundering scheme, became aware that a new recruit was about to join the criminal operation. Mindful of the Biblical command, "Thou shalt ... not suffer sin upon [thy neighbor]," *Leviticus* 19:17, he sought the advice of his rabbi. The rabbi advised warning the new recruit. However worthy such moral guidance might be in general, it was acted upon in this situation to commit a federal crime—theft of government property by conveying to the recruit and his criminal boss the secret information that their phones were tapped. That act obstructed the criminal investigation and led to a conviction that has confronted us with some perplexing sentencing issues.

The principal issue is how the appropriate sentencing guideline should be selected in cases where a defendant's conceded conduct is not typical of the offense of which he has been convicted. The issue arises on the appeal of Neal Elefant from the March 16, 1993, judgment of the District Court for the Southern District of New York (Kevin Thomas Duffy, Judge), convicting him of theft of government property worth more than $100, in violation of 18 U.S.C. § 641 (1988). Because the District Court found that Elefant's conduct, as detailed in the information and plea allocution, was not typical of theft of government property and was far more typical of obstruction of justice, the District Court used the guideline for obstruction of justice, resulting in a higher base offense level. The District Court also added an enhancement for use of a special skill. We find that the use of the obstruction of justice guideline was permissible, but that the enhancement for use of a special skill was not. Accordingly, we affirm the conviction, which is not challenged, but vacate the sentence and remand for resentencing.

## Background

This case involves unusual facts. Elefant was a contract employee of UDF Associates, a small firm that provided translating servic-es to the FBI. In March 1992, Elefant began preparing transcripts of wiretapped communications intercepted pursuant to court order as part of an FBI investigation of a large money-laundering ring. Many of the conversations were in Hebrew, and required translation, but it appears that others were in English.

In May 1992, Elefant became concerned that a new courier, about to join the ring, did not understand that he was becoming involved in illegal activities. An Orthodox Jew, Elefant asked Rabbi Elazar M. Teitz of Elizabeth, New Jersey, for advice. Rabbi Teitz told Elefant that he was morally obligated to warn the new courier if Elefant could do so without putting himself in danger. Apparently understanding the rabbi's caution to mean danger only of physical harm rather than criminal prosecution, Elefant endeavored to follow the rabbi's advice by contacting the new courier and arranging a meeting. In order to impress the courier with the seriousness of the situation, Elefant removed from the FBI office a confidential memorandum and brought it to the meeting. During this meeting, the courier requested Elefant to wait while the courier found the main target of the investigation. Elefant waited for five to twenty minutes, at which point the courier reappeared with the main target, whom Elefant also warned. In warning the courier and the target, Elefant specifically revealed that an investigation, involving wiretaps, was proceeding against them.

Elefant waived indictment, and was charged by information with a single count of theft of government property worth more than $100. The property identified in the information included both the FBI documents that Elefant had removed and the secret information about the court-authorized wiretaps that he had disclosed. On October 27, 1992, Elefant pled guilty pursuant to a plea agreement. The agreement specifically provided that "the sentencing Court may impose any sentence that is authorized by the Sentencing Guidelines," up to the statutory maximum of ten years under 18 U.S.C. § 641.

The presentence report prepared by the Probation Department recommended that

the applicable guideline for Elefant's conduct was the guideline for obstruction of justice, U.S.S.G. § 2J1.2, rather than the guideline for larceny, embezzlement, and other forms of theft, U.S.S.G. § 2B1.1. Section 2J1.2 provides that where the defendant's crime involves obstructing the investigation of an offense, the base offense level is determined by application of section 2X3.1 (accessory after the fact) whenever the result would be higher than the normal offense level for obstruction. Section 2X3.1 provides for a base offense level of six levels less than the offense level for the underlying offense. Because the underlying offense was money-laundering, the Probation Department looked to the guideline for that offense, U.S.S.G. § 2S1.1, which provided an offense level of 25, based on the amount of money laundered. The resulting base offense level for obstruction was thus 19. The Probation Department then added two levels based on Elefant's use of a special skill, his knowledge of Hebrew, *see* U.S.S.G. § 3B1.3, and subtracted three levels for acceptance of responsibility, *see id.* § 3E1.1(b). The guideline range for offense level 18, in criminal history category I, is 27 to 33 months.

Elefant disputed this calculation. He contended that he should have been sentenced under the guideline for theft, U.S.S.G. § 2B1.1, which provides a base offense level of 5 for theft of property valued between $100 and $1,000. He further contended that he should receive a downward adjustment of three levels for acceptance of responsibility,[1] and no upward adjustment for use of a special skill. At the resulting offense level of 2, the guideline range, in criminal history category I, is zero to six months.

At sentencing, Judge Duffy initially accepted the guidelines calculation contained in the presentence report but then decided that the extraordinary facts of the case justified a downward departure below the 27–month bottom of the applicable range. Accordingly, he sentenced Elefant to 18 months' imprisonment, to be followed by three years of supervised release.

**Discussion**

**I. Use of the Obstruction of Justice Guideline**

■ Elefant first argues that the District Court erred in applying the obstruction of justice guideline instead of the theft of government property guideline. Elefant relies on a proviso to U.S.S.G. § 1B1.2(a) stating that "in the case of a plea agreement ... containing a stipulation that specifically establishes a more serious offense than the offense of conviction," the District Court may apply the guideline for the more serious offense. Elefant contends, in effect, that the proviso to section 1B1.2(a) is the only provision that permits use of a guideline for an offense other than the offense of conviction. From his premise that the proviso to section 1B1.2(a) is the exclusive route to the guideline for a more serious offense, he argues that in the absence of a stipulation admitting obstruction, the District Court was required to use the guideline for theft.

The premise of this argument is not correct. In limited circumstances, there is another route to use of a guideline for an offense more serious than the offense of conviction. To understand this alternative route, one must first appreciate how a sentencing judge normally selects an applicable guideline. Section 1B1.2(a) instructs the judge to "[d]etermine the offense guideline ... most applicable to the offense of conviction (*i.e.*, the offense conduct charged in the count of the indictment or information of which the defendant was convicted)." To assist the judge in making this determination, the Sentencing Commission has provided a listing of all federal statutory offenses, cross-referenced to the various guidelines. *See* U.S.S.G.App.A. Thus, a judge sentencing for a violation of 18 U.S.C. § 641, theft of government property, normally turns to Appendix A and finds for that statute a cross-reference to guideline section 2B1.1. However, Appendix A also contains this exception:

> If, in an atypical case, the guideline section indicated for the statute of conviction is

---

**1.** On appeal, Elefant concedes that only a two-level reduction for acceptance of responsibility would be available from this base offense level, since the three-level reduction is available only when the base offense level is 16 or greater. *See* U.S.S.G. § 3E1.1(b).

inappropriate because of the particular conduct involved, use the guideline section most applicable to the nature of the offense conduct charged in the count of which the defendant was convicted.

*See United States v. Perrone,* 936 F.2d 1403, 1419–20 (2d Cir.), *clarified,* 949 F.2d 36 (2d Cir.1991). We do not understand this instruction to mean that whenever a defendant's total criminal conduct includes some acts that constitute an offense more serious than the offense of conviction, the guideline for the more serious offense may be used.[2] That would convert the guideline system into a pure "real offense" system, a course the Commission first considered but explicitly disclaimed. *See* U.S.S.G. Ch. 1, Pt. A, § 4(a). Instead, we understand the exception described in Appendix A to cover those cases, probably few in number, where the conduct constituting the offense of conviction also constitutes another, more serious offense, thereby rendering the offense conduct not typical of the usual means of committing the offense of conviction.

The information to which Elefant pled guilty described his conduct, in part, as "contact[ing] certain targets of the investigations and reveal[ing] to those targets confidential information concerning the ongoing investigation." While Elefant is correct that defendants previously have been convicted under 18 U.S.C. § 641 for selling information, *see, e.g., United States v. Girard,* 601 F.2d 69, 70–71 (2d Cir.), *cert. denied,* 444 U.S. 871, 100 S.Ct. 148, 62 L.Ed.2d 96 (1979), we cannot find that the District Judge was clearly erroneous when he concluded that Elefant's conduct was not typical of theft of government property. *Cf. United States v. McCall,* 915 F.2d 811, 815 (2d Cir.1990). This was an unusual theft of government property that obstructed justice.

Nor can we conclude that the District Judge was clearly erroneous when he concluded that the guideline for obstruction of justice was "most applicable" to Elefant's conduct. Elefant argues that this guideline is inappropriate because he did not have an intent to obstruct, impede, or prevent the wiretap, and such intent is an element of 18 U.S.C. § 2232(c) (1988), one of the statutory violations to which the obstruction of justice guideline ordinarily applies. Even assuming that the evidence must show every element of this particular statutory provision to render the obstruction of justice guideline "most applicable," we are satisfied that the District Court could find by a preponderance of the evidence the necessary intent for a violation of section 2232(c). The evidence indicated that Elefant voluntarily contacted the targets of the investigation and revealed the existence of a wiretap to both the new courier and the main target of the investigation. Although Elefant's *motive* may have been to prevent the new courier from committing a crime, the District Judge could nonetheless infer, as he did, that in pursuing that goal Elefant had the *intent* to obstruct or impede the wiretap. Thus, because the District Judge found that the conduct described in the information was "atypical" and that the obstruction of justice guideline was "most applicable," he was entitled, even in the absence of a stipulation admitting obstruction, to use the obstruction guideline. *See United States v. Cambra,* 933 F.2d 752, 755 (9th Cir.1991).

## II. Special Skill Enhancement

■ Elefant also argues that the District Court erred in adopting the Probation Department's recommendation of a two-level enhancement under U.S.S.G. § 3B1.3 for the use of a special skill, apparently based on

---

2. Rather than use the guideline for a more serious offense than the offense of conviction, the sentencing judge may consider the acts constituting the more serious offense as "relevant conduct," where section 1B1.3 permits, or as conduct justifying use of a more serious criminal history category, where section 4A1.3(e) permits, or as an aggravating circumstance warranting an upward departure, where the aggravating circumstance is "of a kind" or present "to a degree" not adequately considered by the Commission, *see* 18 U.S.C. § 3553(b) (1988). *See United States v. Kim,* 896 F.2d 678, 682–83 (2d Cir. 1990). In the latter circumstances, the extent of the departure would normally be guided by the

Elefant's knowledge of Hebrew.[3] The Government and Elefant initially disagree on the consequence of a ruling by this Court that the special skill enhancement was erroneous, a dispute that raises the preliminary issue of whether the enhancement is reviewable. The Government observes that Judge Duffy departed far below the guideline range that would have applied even without the enhancement, and argues that the enhancement is accordingly unreviewable. We have held, however, that a departure does not insulate an error in the calculation of the guideline range from which the departure is made, *see United States v. Moon*, 926 F.2d 204, 210 (2d Cir.1991), unless the District Court specifically states that it would have departed to the same level regardless of whether it had accepted the defendant's guideline arguments, *id.* No such statement appears in the record in this case.

■ For his part, Elefant not only urges that the enhancement is reviewable but also contends that, if the enhancement was in error, he is entitled to a downward departure of exactly the same number of months from the correct, unenhanced guideline that was used by the sentencing judge in departing downward from the incorrect, enhanced guideline. In other words, since the District Judge departed downward nine months from level 18's 27–month minimum, he must now depart downward nine months from level 16's 21–month minimum. We disagree with this view as well, since it ignores the discretion of district courts to determine the appropriate magnitude of departures. *See United States v. Campbell*, 967 F.2d 20, 25–27 (2d Cir.1992). The degree of downward departure appropriate from one starting point will not necessarily be the same as is appropriate from a lower starting point. Indeed, from a reduced starting point, the judge might conclude that no departure is warranted. After vacation of a departure sentence because of an incorrect guideline calculation, a sentencing judge retains discretion to determine whether and how far to depart, although the judge may not impose a *higher* sentence, in the absence

of a successful cross-appeal or reliance on some appropriate basis justifying the higher sentence. *See North Carolina v. Pearce*, 395 U.S. 711, 726, 89 S.Ct. 2072, 2081, 23 L.Ed.2d 656 (1969).

We thus reach the merits of the special skill enhancement. Section 3B1.3 provides for a two-level upward adjustment when the defendant "used a special skill[ ] in a manner that significantly facilitated the commission or concealment of the offense." The commentary to this section emphasizes that the special skill must have "facilitate[d] significantly the commission or concealment of a crime," U.S.S.G. § 3B1.3, comment. (backg'd.), and that a special skill "usually requir[es] substantial education, training or licensing," *id.* comment. (n. 2). If we assume that Elefant's knowledge of Hebrew and skills as a translator constitute a "special skill," the evidence indicates no more than that this skill placed Elefant in a position where he had the unfortunate opportunity to commit this crime. But because Elefant did not contemplate committing this offense until he learned of the new courier and received "guidance" from Rabbi Teitz, the critical question is whether Elefant's special skill "facilitate[d] significantly" the offense after this point. There is no evidence that Elefant used his foreign language skill to perform unauthorized translations, or otherwise to facilitate the offense, regardless of whether the offense is viewed as theft of government property or obstruction of justice. He did not translate a Hebrew transcript of any intercepted conversation when making his disclosures; the translations had already been made. A person without foreign language ability, once aware of the intercepted communications, could just as easily have removed documents translated into English from the FBI office or informed the targets of the existence of the wiretaps. Such a person would also be no less able to conceal the crime. *See United States v. Fritzson*, 979 F.2d 21, 22 (2d Cir.1992). Under these circumstances, we conclude that application of the special skill enhancement was error.

---

guideline range applicable to the more serious offense. *See id.* at 684–85.

**3.** Section 3B1.3 also applies to abuse of a position of trust, but the Government has not sought to uphold the enhancement on this ground.

Since the sentencing judge made a downward departure and retains discretion as to the extent of a departure upon resentencing, it will be up to Judge Duffy to determine how much, if any, reduction from the original sentence should result from the elimination of the special skill enhancement.

### Conclusion

The conviction, which is not challenged, is affirmed. As to the sentence, we uphold application of the obstruction guideline, but vacate the sentence, and remand for resentencing without application of a special skill enhancement.