# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-4222

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Arkansas. |
| Timothy D. Casey, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 12, 1998

Filed: October 21, 1998

_____

Before BEAM and MURPHY, Circuit Judges, and MELLOY[1], District Judge.

_____

BEAM, Circuit Judge.

Timothy D. Casey appeals his conviction and sentence. Casey entered a plea of guilty to one count of bank theft; two counts of counterfeiting and one count of access device fraud. He contends that the district court erred in sentencing him under the guideline applicable to burglary instead of that applicable to larceny. We reverse and remand.

_____

[1]The Honorable Michael J. Melloy, Chief United States District Judge for the Northern District of Iowa, sitting by designation.

## I.    BACKGROUND

The Secret Service and the FBI investigated ATM thefts, credit card fraud and counterfeiting activities in the Little Rock, Arkansas, area.  Because Casey worked for a property management company that managed banks, he was familiar with daily operations of certain banks and ATM machines; had access to ATM machine inner box numbers; and had keys to locks in the banks.  Casey entered three bank branches on three occasions in July and August 1996 and used a screwdriver to open the backs of ATM machines.  At one bank he obtained $140, at the second bank he obtained $24,000, and at the third bank he was unsuccessful.

In October 1996, a friend of Casey's obtained a computer scanner and produced $5,000 in counterfeit $100 bills.  Casey attempted to pass some of the bills at two establishments.  In January 1997, Casey, through a friend, obtained the credit card numbers of customers of the friend's employer.  Casey purchased a Sony Play Station and attempted to purchase a laptop computer with one of the credit card numbers. Casey's residence was searched pursuant to a federal warrant and he was arrested.[2]  He was charged with one count of bank theft in violation of 18 U.S.C. § 2113(b); two counts of counterfeiting in violation of 18 U.S.C. § 472; and one count of access device fraud in violation of 18 U.S.C. § 1029(a)(2) and (b)(1).  He entered a plea of guilty to each of those counts.  No plea agreement was involved.

In its Presentence Investigation Report (PSR), the probation office initially recommended that Casey's offenses be grouped together under United States Sentencing Guidelines Manual § 3D1.1.  That recommendation would have resulted in a sentence of six to twelve months.  The government objected and moved for an

---

[2]He was also arrested for state drug offenses and for the murder of his former wife.  Those charges have no relevance to this action.

upward departure. It contended that a departure was warranted because grouping the various counts resulted in no incremental punishment for Casey. In other words, the government argued, although Casey had committed seven crimes in eight months, he would be sentenced as though he committed only the bank theft.

The district court declined to depart upward, instead stating that the bank theft should properly be viewed as a burglary, an offense that would not be grouped with counterfeiting and fraud under section 3D1.1. The government agreed, Casey was given an opportunity to respond, and the probation office was directed to prepare another recommendation. Casey later moved to withdraw his plea, but the motion was denied. Casey was sentenced to eighteen months imprisonment.

On appeal, Casey contends that the district court misapplied the guidelines. He argues that the court erred in applying a different guideline section than the one most applicable to the offense of conviction.

## II. DISCUSSION

We review the sentencing court's factual determinations for clear error while its interpretation of the Sentencing Guidelines are subject to de novo review. See United States v. Larson, 110 F.3d 620, 627 (8th Cir. 1997). Resolution of this appeal requires an understanding of the structure of the Sentencing Guidelines. The first step in application of the guidelines is determining which offense guideline section covers the offense of conviction. See U.S.S.G. § 1B1.2(a); see also United States v. Street, 66 F.3d 969, 979 (8th Cir. 1995). The offense guideline section is the foundation of the sentence. See United States v. Saavedra, 148 F.3d 1311, 1314 (11th Cir. 1998). Because it channels the remainder of the sentencing process, selection of the correct offense guideline section is critically important. Id. In order to correctly determine the applicable offense guideline, a sentencing court must identify "the offense guideline section in Chapter Two (Offense Conduct) most applicable to the offense of

conviction." U.S.S.G. § 1B1.2(a). The offense of conviction is defined as "the offense conduct charged in the count of the indictment or information of which the defendant was convicted." Id. The sentencing court is then directed to "use the guideline section from Chapter Two most applicable to the offense of conviction" and advised that "[t]he Statutory Index (Appendix A) provides a listing to assist in this determination." U.S.S.G. § 1B1.2, comment. (n.1). That listing cross-references federal statutory offenses to the various guideline sections.[3] See U.S.S.G. App. A.

There is one limited exception to the general rule that the offense conduct for guideline purposes is that charged in the indictment: "*Provided*, however, in the case of a plea agreement (written or made orally on the record) containing a stipulation that specifically establishes a more serious offense than the offense of conviction, determine the offense guideline section in Chapter Two most applicable to the stipulated offense." U.S.S.G. § 1B1.2(a). In reference to that limited exception, Appendix A further provides: "If, in an atypical case, the guideline section indicated for the statute of conviction is inappropriate because of the particular conduct involved, use the guideline section most applicable to the nature of the offense conduct charged in the count of which the defendant was convicted. (See § 1B1.2)."

The government contends that the language in the Appendix A is authority for the proposition that the sentencing court is free to apply a guideline section other than that applicable to the offense of conviction in two instances: (1) when a defendant has stipulated to a more serious offense; and (2) when the case is "atypical." The government contends that the district court properly sentenced Casey under either or both of these exceptions. Casey contends, however, that the language in Appendix A merely refers back to the "stipulation" exception in section 1B1.2 and does not create

---

[3]For example, Casey was charged with violating 18 U.S.C. § 2113(b). In Appendix A, that statute is cross referenced to U.S.S.G. § 2B1.1 (theft, embezzlement, receipt of stolen property, and property destruction). See U.S.S.G. App. A. Burglary is a violation of 18 U.S.C. §§ 2113(a), 2115, 2117, and 2118(b) and is cross referenced to U.S.S.G. § 2B2.1 (burglary and trespass). See U.S.S.G. App. A.

an "atypical case" exception. Casey contends that he has not stipulated to conduct amounting to burglary.

We need not decide whether Appendix A indeed creates an "atypical case" exception, because we find this is not an atypical case. The exception described in Appendix A should "cover those cases, probably few in number, where the conduct constituting the offense of conviction also constitutes another, more serious offense, thereby rendering the offense conduct not typical of the usual means of committing the offense of conviction." United States v. Elefant, 999 F.2d 674, 677 (2d Cir. 1993). Examples of such atypical cases are theft of government property that was more akin to obstruction of justice, see id.; property damage involving reckless disregard for human life, see United States v. Daniels, 948 F.2d 1033, 1036 (6th Cir. 1991); and fraud with counterfeit Social Security cards more aptly sentenced as trafficking in false naturalization documents, see United States v. Kuku, 129 F.3d 1435, 1439 (11th Cir. 1997), cert. denied, 118 S. Ct. 2071 (1998). The only unusual circumstance in this case is that the prosecutor charged the defendant under, and exacted a guilty plea to, a criminal statute having a less harsh punishment than he might have.

We thus do not interpret the "atypical case" exception, if it exists, to mean that whenever a defendant's total criminal conduct includes some acts that would constitute an offense more serious than the offense of conviction, the guideline for the more serious offense may be used. See Elefant, 999 F.2d at 677. To account for such more serious conduct, the Sentencing Guidelines unquestionably allow the sentencing judge to consider conduct from uncharged or dismissed counts for certain purposes. See United States v. Harris, 70 F.3d 1001, 1003 (8th Cir. 1995). Such conduct can factor into the offense level as a specific offense characteristic (including a victim-related or role-in-the-offense adjustment), see id.; as "relevant conduct" under section 1B1.3, see United States v. Galloway, 976 F.2d 414, 422-24 (8th Cir. 1992) (en banc); as conduct justifying the use of a more serious criminal history category under section 4A1.3(e), see Harris, 70 F.3d at 1003-04; or as an aggravating circumstance warranting an

upward departure under 18 U.S.C. § 3553(b), <u>see</u> <u>United States v. Washington</u>, 109 F.3d 459, 462-63 (8th Cir. 1997).

We find no stipulation by Casey that would justify application of the proviso to section 1B1.2. He merely assented in court to the prosecution's version of the facts. That recitation of facts did not include conduct that could be called burglary. The fact that the PSR outlined facts which could arguably amount to burglary, and that Casey did not object, cannot be equated with a stipulation. Accordingly, under the facts of this case, we find that the district court erred in sentencing Casey for burglary.

### III.   CONCLUSION

We reverse and remand for proceedings consistent with this opinion. We express no opinion on the propriety of an upward departure.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.