# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-1703

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Derek John Archambault, also | * | District of South Dakota. |
| known as Derek Martinez, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 13, 2003

Filed:  October 2, 2003

_____

Before MORRIS SHEPPARD ARNOLD, HANSEN, and  SMITH, Circuit  Judges.

_____

SMITH, Circuit Judge.

Derek John Archambault pleaded guilty to one count of arson (in violation of 18 U.S.C. §§ 81 and 1153). At sentencing, the district court[1] upwardly departed pursuant to Sentencing Guidelines §§ 4A1.3 and 5K2.7. On appeal Archambault

_____

[1] The Honorable Charles B. Kornmann, United States District Judge for the District of South Dakota.

argues that the departure was unwarranted and that the government breached its plea agreement.[2] We disagree and affirm the sentence of the district court.

## I.

On the evening of January 3, 2001–after a week of drinking and consuming pills–Archambault ignited and burned two vans. The vans belonged to the Bullhead Rock Creek District Community Center. As a result of the arson, the Rock Creek District could not use its vans to transport meals to the elderly, youths to special events, and other Rock Creek District members to community events.

The next day, tribal police arrested Archambault, and on November 20, 2001, Archambault pleaded guilty to one count of arson. The plea agreement provided that the United States Attorney's Office would "recommend that the Court consider imposing a sentence of imprisonment at the lower end of the appropriate guideline range." After Archambault entered his plea, the United States Probation Office began its presentence investigation. During a presentence investigation interview, Archambault admitted to–among other things–selling marijuana, abusing inhalants, alcohol, amphetamines, and marijuana, and stealing approximately $1,000 per week. Archambault's counsel was not present during this interview.

After concluding its investigations, the Probation Office determined that Archambault's offense level was nine, his criminal history category was I, and his sentencing guidelines range was four to ten months. However, at sentencing the district court upwardly departed from this range and sentenced Archambault to twenty-three months' incarceration. The district court based its upward departure on two factors. First, the district court relied upon Sentencing Guidelines § 5K2.7 and

---

[2] Archambault has waived his third argument–that the district court erred when it failed to allow the defendant an opportunity for allocution at sentencing. Appellant's Br. at 25–26.

concluded that Archambault's criminal acts significantly disrupted a Rock Creek District governmental function. Second, the district court relied upon Sentencing Guidelines § 4A1.3 and found that Archambault's criminal history category significantly under-represented his past criminal conduct. Archambault appealed and alleges two errors.

## II.

First, Archambault argues that the district court impermissibly upwardly departed from Archambault's Guidelines range. Previously, we would have reviewed a district court's upward departure for an abuse of discretion. *United States v. Koon*, 518 U.S. 81, 98–100 (1996). However, recent legislative changes have modified our standard. Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 (PROTECT Act), Pub. L. No. 108-21, § 401(d), 117 Stat. 650, 670 (2003) (amending 18 U.S.C. § 3742(e)). Now, "[w]hether the district court based a departure on a permissible factor . . . is to be reviewed de novo."[3] *United States v. Flores*, 306 F.3d 760, 763 (8th Cir. 2003) (citing *id.*). Nevertheless, "[a] sentencing court's factual findings are still reviewable for clear error and the reasonableness of a permissible departure for abuse of discretion." *Id.*

"A factor is a permissible basis for departure if it 'advances the objectives set forth in [18 U.S.C. § ] 3553(a)(2),' 'is authorized under [18 U.S.C. § ] 3553(b),' and 'is justified by the facts of the case.'" *Id.* (citing 18 U.S.C. § 3742(j)(1)). In this case, the district court cited two factors to justify its upward departure–the failure of Archambault's criminal history category to reflect adequately the seriousness of his past criminal conduct and the fact that his crime significantly interrupted a

---

[3] If a district court departs from the guideline range, the PROTECT Act also requires that the court state its reasons for departing "with specificity in the written order of judgment and commitment . . . ." § 401(c), 117 Stat. at 669 (amending 18 U.S.C. § 3553(c)(2)). However, neither party raised this as an issue in this case.

governmental function. We conclude in this case that these factors are permissible grounds for an upward departure.

First, both of these factors meet the first requirements of § 3742(j)(1)–they advance the objectives of § 3553(a). As we noted in *Flores*, a district court advances "the statutory sentencing objectives of 'afford[ing] adequate deterrence to criminal conduct,' § 3553 (a)(2)(B) and 'protect[ing] the public from further crimes of the defendant,' § 3553 (a)(2)(C)," when it takes into account past criminal conduct. 336 F.3d at 764. Moreover, when the district court took into account the fact that Archambault's crime significantly interrupted a government function, it advanced the statutory sentencing objective of "reflect[ing] the seriousness of the offense, [ ]promot[ing] respect for the law, and [ ] provid[ing] just punishment for the offense." 18 U.S.C. § 3553 (a)(2)(A).

In addition, both factors are authorized under § 3553(b)(1). Section 3553(b)(1) authorizes a court to depart based on a fact that was "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines . . . ." The Commission expressly provided for the departures the district court made. *See* U.S Sentencing Guidelines Manuel §§ 4A.1.3 and 5K2.7. In so doing, the "Commission has acknowledged that it could not adequately account for all circumstances that might arise" in these situations, and thus a departure under such circumstances would be warranted. *Flores*, 336 F.3d at 764.

Finally, the facts of the case warrant a departure under §§ 4A.1.3 and 5K2.7 of the Guidelines. We first conclude that Archambault's criminal history category of I does not adequately reflect the seriousness of his past criminal conduct, *see* U.S. Sentencing Guidelines Manuel § 4A.1.3, because one of Archambault's counts of arson was dismissed. *United States v. Casey*, 158 F.3d 993, 996–97 (8th Cir. 1998) ("[T]he Sentencing Guidelines unquestionably allow [a court] to consider conduct from uncharged or dismissed counts" to justify a departure to a more serious criminal

history category.). Moreover, during a presentence investigation interview, Archambault admitted to–among other things–selling marijuana, abusing inhalants, alcohol, amphetamines, and marijuana, and stealing approximately $1,000 per week. Archambault does not contest this prior criminal conduct.[4]

An upward departure is also justified because the facts show that Archambault's arson significantly interrupted a governmental function. *See* U.S. Sentencing Guidelines Manuel § 5K2.7. The Rock Creek District used the vans that Archambault destroyed or damaged to deliver meals on wheels, to transport district youth to community events, and to provide transportation to community members for travel. While the disruption did not stop the meals on wheels program, the District Chairman testified the loss caused many of the other members of the community to lose their source of transportation for three months. As the district court noted, the Rock Creek District is a "very impoverished area where the vast majority of the people are people of low income, without their own source of transportation . . . ." Tr. Sentencing Hr'g, at 18 (Feb. 26, 2002); *see also* North Dakota Indian Affairs Commission, *Facts and Profiles: Indians in North Dakota* 14 (1999), *available at* http://www.health.state.nd.us/ndiac/pubs/FactsProfiles.pdf (noting that "[m]ost

---

[4] Instead, he argues that such statements were obtained without the benefit of counsel in violation of the Sixth Amendment. The Sixth Amendment, however, does not apply to this issue. Archambault voluntarily participated in the presentence investigation. Furthermore, Archambault "has not alleged or shown that his attorney's presence was requested or that his attorney was excluded from the interview." *United States v. Bald Eagle*, 997 F.3d 1234, 1235 (8th Cir. 1993). In fact, Archambault's attorney concedes that he had a right to be present for the presentence interview, that he was notified of when and where the interview was to take place, but that he chose not to attend the interview (because of a conflict in his schedule and the distance to where the defendant was incarcerated). Thus, no Sixth Amendment violation exists. Moreover, we note that "no court has found the Sixth Amendment right applies to routine presentence interviews." *United States v. Tyler*, 281 F.3d 84, 96 & n. 15 (3d Cir. 2002) (citing cases).

transportation [for the Rock Creek District] is by privately owned vehicles and [that] finding a ride is a major problem for individuals without vehicles"). Such a disruption for people who depended on these vans for transportation is–in our judgment–significant.

Archambault also argues that a Native American Tribal District is not a "governmental entity" for purposes of § 5K2.7. We disagree. Unless the Sentencing Guidelines provide a special definition of the particular term whose meaning is at issue, we give the language of the Guidelines its ordinary meaning. *Chapman v. United States*, 500 U.S. 453, 462 (1991). Government is defined as "the body of persons that constitutes the governing authority of a political unit or organization . . . ." Webster's Third New International Dictionary 982 (3d ed. 1976); *see also* Black's Law Dictionary 695 (6th ed. 1990) ("The system of polity of a state; that form of fundamental rules and principles by which a nation or state is governed . . . .") The Rock Creek District is a recognized governing authority of the Standing Rock Sioux Tribe–a sovereign entity under federal law. Act of Mar. 2, 1889, ch. 405, § 3, 25 Stat. 888, 889 (codified as amended 25 U.S.C. §§ 476, 477). As such, it is a "body of persons that constitutes the governing authority of" the Standing Rock Sioux Tribe and is a "governmental entity" under § 5K2.7 of the Guidelines.

Thus, for the foregoing reason, we conclude that an upward departure was warranted in this case.

III.

Archambault also argues that the Government breached its plea agreement because it failed to object to the district court's upward departure. Archambault's plea agreement stated that the United States Attorney's Office would "recommend that the Court consider imposing a sentence of imprisonment at the lower end of the appropriate guideline range." Yet, at sentencing, the Assistant United States Attorney did not bring the agreed recommendation to the attention of the District Court Judge.

However, we have previously rejected Archambault's argument. *United States v. Cohen*, 60 F.3d 460, 462 (8th Cir. 1995). In *Cohen*, we were faced with nearly the same situation. There, the Government stated that it had "no specific recommendation as to [the defendant's] sentence," despite promising in its plea agreement that it would recommend a sentence at the low end of the Guidelines range. *Id.* Nevertheless, we reasoned that because Cohen's defense counsel neither objected, nor questioned the Government's silence at any time during the sentencing, Cohen failed to preserve his objection for appeal. *Id.*

Likewise in this case, the Government did not recommend that Archambault be sentenced at the low end of the Guidelines range. Also similarly, Archambault, like Cohen, failed to raise an objection or otherwise comment on the Government's silence. As we noted in *Cohen*, Archambault could have done any number of things to preserve the objection:

> [He] could have raised an immediate objection to the statement, thereby requiring the prosecutor to make the specific recommendation it had promised. Second, he could have asked for a continuance for the purpose of recalling the Assistant United States Attorney who had made the promise. Third, he could have restated the terms of the agreement in open court. Fourth, he could have moved to withdraw the plea. Having elected to take none of these actions, he cannot now raise an eleventh-hour attack on the validity of his plea.

*Id.* (citations omitted). As we noted in *Cohen*, it would be unfair to permit Archambault "to sit idly by at the time of sentencing, when by exercising any one of the courses of action open to him he could have obtained a clarification and correction of the government's position . . . ." *Id.* Thus, based on the precedent of *Cohen*, we conclude that Archambault has waived his right to appeal this issue.

## IV.

Accordingly, we affirm the judgment of the district court.

_____