# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-1968

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | On Appeal from the United |
| v. | * | States District Court for the |
| | * | Western District of Missouri. |
| Christopher Ryan King, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 9, 2008
Filed: March 17, 2009

_____

Before LOKEN, Chief Judge, BEAM, and ARNOLD, Circuit Judges.

_____

BEAM, Circuit Judge.

Christopher Ryan King appeals from the district court's[1] imposition of a ninety-six month sentence, levied after he entered a plea of guilty to wire fraud and money laundering charges. We affirm.

_____

[1]The Honorable Ortrie D. Smith, United States District Judge for the Western District of Missouri.

## I.    BACKGROUND

In November 2006, a grand jury returned a two-count indictment against King alleging wire fraud and money laundering arising from King's automobile dealings in January and February 2005. King owned and operated two used car dealerships in Joplin, Missouri–The Auto Store, Inc. through about December 2004; and Auto Source, which started operating at about that same time. On January 28, 2005, King submitted the high bid for twenty-one cars at Adesa Auto Auction in Tulsa, Oklahoma, totaling $215,170. In order to receive possession of the vehicles and their titles, King had an associate telephone Adesa Auto purporting to be a vice president of Bank of America. This imposter falsely represented that King had access to an unused line of credit with the bank in the amount of $500,000.

On February 2, 2005, King delivered twenty-one insufficient fund checks to Adesa Auto for the vehicles. The next day, King faxed a fraudulent document to Adesa purporting to be a letter from the vice president of Bank of America stating that the line of credit indeed existed. Based on this fax, Adesa released the titles to the vehicles to King on February 4, 2005. All twenty-one checks were returned to Adesa Auto for insufficient funds on or about February 14, 2005. Meanwhile, King sold nearly all, if not all, of the twenty-one vehicles to various dealers, individuals, and auction houses between February and April of 2005. The proceeds from these sales were deposited in The Auto Store or Auto Source checking accounts. King never paid Adesa Auto for the vehicles.

King pleaded guilty to both charges. During the preparation of the presentence investigation report (PSR), King met with U.S. Probation Officer Melissa Potter on January 31, 2007. The investigator with the Federal Public Defender's office was also present at that interview. King did not complete all of the necessary paperwork at that time, however, and was required to complete the financial documentation and return it to Potter no later than February 21, 2007. King returned a net worth statement and

a monthly cash flow statement but failed to adequately verify the information as required. Specifically, he did not return an affidavit entitled "Declaration of Defendant or Offender Net Worth and Cash Flow Statements." Potter then asked King to return to her office again on April 3, 2007, to complete that document. During that April 3, 2007, meeting, King made several uncounseled statements. King alleges that the day after that meeting, on April 4, 2007, King's attorney, "consistent with her obvious instructions throughout the process," instructed Potter not to contact King directly and to route all future communication through her.

Generally, when Potter compared the information King provided during his presentence interview with information she obtained independently, a number of inconsistencies appeared and it was apparent King failed to accurately report all financial information. The primary facts that the probation officer determined King materially misrepresented or failed to disclose were: (1) mislabeling as "gifts from family," and significantly understating, the amount of money he was receiving on a monthly basis from Western Funding,[2] a financing company; (2) failing to disclose a reserve account in the amount of $26,000 held by Western Funding from which King was to receive money during the next twenty-nine months; (3) failing to disclose his interest and/or involvement in King & Son Properties, LLC, a partnership formed by King and his father that owned real property; and (4) failing to disclose a $4,500 check he forged and deposited in his business bank account in March 2007, after his indictment for the instant charges. These inconsistencies formed the grounds for a

_____

[2]As described at sentencing, Western Funding is a third-party finance company used by King in his dealership business to finance vehicles for clients with "less than perfect" credit. King's father signed the Western Funding agreement because previously King obtained the dealer's license in his father's name (unbeknownst to King's father at the time), as King was a convicted felon and thus unable to obtain a license in his own name. Western Funding requested that the person holding the dealer license (King's father) be the same person to sign its agreement. In reality, though, King conducted the business with, and collected any proceeds from, the Western Funding business relationship.

suggested obstruction of justice adjustment. The PSR also recommended an adjustment for acceptance of responsibility given King's timely plea of guilty. The court accepted the obstruction of justice recommendation but denied the suggested adjustment for acceptance of responsibility.

Following the presentation of evidence and argument, the district court accepted the facts set out in the PSR, except as to the amount of restitution. As to the obstruction adjustment and denial of acceptance of responsibility, the court noted that this was King's third federal offense of this kind, and the court advised that King "could do very well if he were to dedicate his intellect and his energies to honest enterprise." Instead, however, the court noted that King had used his intelligence only to further his "con-artist" and "shell game" activities, specifically referencing King's misrepresentation on the Income and Expense Statement regarding the proceeds from the loss reserve at Western Funding, and the deliberate and intentional shroud he placed around his partnership with his father. The district court held that King's deception was material in this case as restitution and fines were key in the imposition of sentence. As such, King's failure to reveal key facts as to his income was critical. Further, the fact that King committed criminal conduct even after his indictment in the instant case by forging his wife's signature on the $4,500 check not only supported the obstruction of justice adjustment but additionally justified the denial of acceptance of responsibility.

On appeal, King challenges the use of statements provided by King to the probation officer during the April 3, 2007, meeting without King's attorney present. These statements were used, in very small part, to support the ultimate sentence, which involved a two-level adjustment for obstruction of justice, a denial of adjustment for acceptance of responsibility and an upward variance from the guidelines.

## II.  DISCUSSION

### A.  April 3, 2007, Statements

Our review of the district court's use of statements made by King to Potter on April 3, 2007, outside the presence of his attorney, is for plain error as it was not raised below.  United States v. Kirk, 528 F.3d 1102, 1109 (8th Cir. 2008).  A plain error should be corrected only if (1) there is error, (2) the error is plain, (3) the defendant proves the error affects substantial rights, and (4) the error seriously affects the fairness, integrity or public reputation of judicial proceedings.  United States v. Davis, 538 F.3d 914, 917 (8th Cir. 2008).  There was no plain error here.

On April 3, 2007, King told Potter that the money listed as "gifts from family" on his monthly cash flow statement was from his father and that the amount of the gift was $1,000 to $2,000 each month.  King told Potter his father received the money from Western Funding pursuant to an agreement entered into in his father's name on King's behalf.  Following this discussion, Potter independently investigated the Western Funding monies.

King argues on appeal that his uncounseled statements to Potter should not have been considered by the district court because "the record [] shows counsel had instructed the probation officer to go through counsel in all her dealings with Mr. King."  First, King does not have a Sixth Amendment right to counsel during a PSR interview, as it is not a "critical stage" of the prosecution as contemplated by Kirby v. Illinois, 406 U.S. 682, 690 (1972).  "[N]o court has found the Sixth Amendment right to counsel applies to routine presentence interviews," and King cites to no binding authority holding otherwise.  United States v. Tyler, 281 F.3d 84, 96 (8th Cir. 2002).  King does, however, note that this court has "suggested" that if a defendant shows that he requested his attorney's presence or that his attorney was excluded from the interview, then statements made without counsel should not be used against him.

-5-

United States v. Bald Eagle, 997 F.2d 1234, 1235 (8th Cir. 1993); see also Fed. R. Crim. P. 32(c)(2) ("The probation officer who interviews a defendant as part of a presentence investigation must, on request, give the defendant's attorney notice and a reasonable opportunity to attend the interview.").

It is significant that King voluntarily participated in the presentence investigation. United States v. Archambault, 344 F.3d 732, 736 n.4 (8th Cir. 2003). Further, contrary to King's allegation, nothing in the record indicates this April 3, 2007, conversation regarding the source of the monthly $1,000 occurred despite King's request for his attorney or that his attorney was excluded from the interview. Bald Eagle, 997 F.2d at 1235. In fact, the inferences from the record support the antithesis–that only *after* the April 3, 2007, discussion did King's counsel request that all future communication go through her. And finally, even if we assume that it was error for the court to consider King's statement regarding the source of these funds through Western Funding, the error was not so "plain" that the district court and "prosecutor were derelict in countenancing it, even absent the defendant's timely assistance in detecting it." United States v. Colon, 905 F.2d 580, 588 (2d Cir. 1990).

**B.     Obstruction of Justice Adjustment and Denial of Reduction for Acceptance of Responsibility**

The gist of King's remaining arguments on appeal is that there was insufficient evidence supporting the district court's imposition of an upward adjustment for obstruction of justice and the court's denial of a reduction for acceptance of responsibility. The district court's interpretation of the Sentencing Guidelines is reviewed de novo while the district court's factual findings underlying an adjustment for obstruction of justice or a denial of a reduction for acceptance of responsibility are reviewed for clear error and given great deference. United States v. Rivera-Ordaz, 554 F.3d 724, 726 (8th Cir. 2009); United States v. Brown, 539 F.3d 835, 839 (8th

Cir.), cert. denied, 129 S. Ct. 658 (2008). We find no error here and could not state it better than the district court. At sentencing, the district court aptly said:

> Mr. King is a superb con-artist and his glibness and his intelligence certainly have assisted him in that activity. He is also a superb shell game artist. When certain facts benefit him, he recognizes those facts. And when they do not, he denies their existence. In this case Mr. King misrepresented his income on the Income and Expense Statement. He well knew that he was entitled to the proceeds of the loss reserve at Western Funding. It was never his father's. It's not his fathers [sic] now. It was always Mr. King's. And yet he failed to disclose that on the [I]ncome and Expense Statement. Mr. King further knew that he was a partner in King & Son's Properties L.L.C. He was a partner on his income tax return in 2003. When it became disadvantageous for him to be a partner when he filed his bankruptcy, he stopped being a partner and very likely defrauded creditors in that bankruptcy proceeding by that act. He may not be a partner now, I'm not sure about that. But I think that he was a partner at the time he filled out the net worth statement and he failed to disclose that. Further there is this $4,500 check which was forged on his former wife's realty account. That was not disclosed on any of the subsequent financial filings made with the probation department. Those deceptions are important and they are material because this is a case in which there will be a substantial restitution obligation.

It is true that merely "providing incomplete or misleading information, not amounting to a material falsehood" to a probation officer during a presentence investigation does not support an enhancement for obstruction of justice. U.S.S.G. § 3C1.1 cmt. n.5(c). However, the omissions in this case were, in fact, material because the entire point of the investigation was to reveal what funds King had available to pay restitution. For example, even though King did eventually reveal his relationship with Western Funding, he only estimated his monthly income at $1,000 to $2,000 when many months it was $3,000 to $5,000. King also initially indicated that the money was a "gift from family," and failed to reveal that there was a reserve

account at Western Funding for $26,000. These facts, alone, were material and sufficiently support the district court's adjustment. The district court's findings are not clearly erroneous and support its legal conclusion that King's offense level should be increased two levels for obstruction of justice.

Flowing from our determination regarding the adjustment for obstruction of justice is our support of the district court's denial of any reduction for acceptance of responsibility. Logically speaking, conduct resulting in an enhancement for obstruction of justice ordinarily indicates that the defendant has not accepted responsibility of his criminal conduct, although there may be extraordinary cases in which adjustments under both sections might apply. U.S.S.G. § 3E1.1 cmt. n.4. There is nothing extraordinary about King's acceptance of responsibility here and we cannot say that the district court's decision was clearly erroneous. Indeed, King's argument at sentencing was that pleading guilty, alone, supported the reduction. Here, though, the guilty plea does not pass muster. We need go no further in our analysis on this point than to mention the fact that King engaged in additional unlawful conduct by his forging the $4,500 check following his indictment on the charges we now review–this, alone, justifies the district court's denial for any credit for acceptance of responsibility. Committing a new crime while awaiting a sentence for similar crimes is an independent and legally sufficient basis for denying acceptance of responsibility. See United States v. Tjaden, 473 F.3d 877, 879-80 (8th Cir. 2007).

## III.    CONCLUSION

For the reasons stated, we affirm.

_____