**UNITED STATES of America, Plaintiff,**

v.

**Bradley YAHNKE, Defendant.**

**No. CR 03–0022–MWB.**

United States District Court, N.D. Iowa, Cedar Rapids Division.

Dec. 23, 2003.

---

**4.** *Id.*

Anne M. Laverty, David E. Mullin, Willey, O'Brien, Mullin, Laverty & Hanrahan, LC, Cedar Rapids, IA, for Defendant.

Matthew J. Cole, US Attorney's Office, Cedar Rapids, IA, for Plaintiff.

### MEMORANDUM OPINION AND ORDER OF JUDGMENT ON SENTENCING

BENNETT, Chief Judge.

### TABLE OF CONTENTS

I. *INTRODUCTION* ..................................................1177
 A. *Factual Background*.........................................1177
 1. *The charged offense* ................................1177
 2. *Yahnke's criminal history* .........................1178
 B. *Procedural Background* ....................................1180
 1. *Yahnke's present charge and plea* ..................1180
 2. *Sentencing recommendations and disputes* ..........1180

II. *LEGAL ANALYSIS* ...........................................1181
 A. *Defendant's Guideline Sentence* ...........................1181
 B. *Upward Departure* ........................................1182
 1. *Arguments of the parties* ..........................1182
 2. *Guidelines determination and authority to depart* ...1182
 a. *The general scheme* ...........................1182
 b. *The grounds for departure at issue here*.........1183
 3. *Prior murder conviction* ...........................1185
 a. *Pertinent decisions* ..........................1185
 i. *United States v. Morrison* ................1185
 ii. *United States v. Henderson* ..............1187

 *iii.* *United States v. Rivera* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1187
 *iv.* *United States v. Grey Cloud* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1188
 *b.* *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1188
 *4.* *Incidents resulting in parole violations* . . . . . . . . . . . . . . . . . . . . . . . . 1190
 *a.* *Seriousness of past criminal conduct* . . . . . . . . . . . . . . . . . . . . . . . 1191
 *b.* *Potential for recidivism* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1191
 *5.* *Other admitted criminal conduct* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1192
 *6.* *Extent of the departure* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1193

*III.* *CONCLUSION AND ORDER OF JUDGMENT* . . . . . . . . . . . . . . . . . . . . . . . . . . . 1195

Although this court has often complained that the United States Sentencing Guidelines require imposition of a sentence that is too harsh, this is one of those rare cases in which the court believes that the defendant's "criminal history category [under the Guidelines] does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3.[1] Therefore, the court

1. The undersigned shares many of the views expressed by Senior Circuit Judge Myron H. Bright, in several of his concurrences and dissents, condemning the harsh injustices that application of the Federal Sentencing Guidelines imposes. *See, e.g., United States v. Sweesy*, 272 F.3d 581, 583–84 (8th Cir.2001) (Bright, J., dissenting) (noting that "[j]udges should take into account that many guideline drug sentences are often heavier than is warranted by the nature of the crime. This is where a district judge's discretion becomes important and where the judge often should take advantage of the provisions that permit reducing sentences under the guidelines."); *United States v. Jones*, 145 F.3d 959, 966 (8th Cir.1998) (Bright, J., dissenting in part and concurring in part) ("The sentence of Jones, a man with the mind of a child, to thirty years of incarceration makes a mockery out of the phrase, 'Equal Justice Under the Law.' In this case, the lowest person on the totem pole, a mere street-level seller with an I.Q. of fifty-three received a heavier sentence than the mastermind of the conspiracy and the conspiracy's primary drug supplier. What kind of system could produce such a result? This case provides yet another example of how rigid sentencing guidelines and the mandatory minimums associated with drug cases make an unfair 'criminal' system.") (footnote omitted); *Montanye v. United States*, 77 F.3d 226, 233 (8th Cir.1996) (Bright, J., dissenting) ("By any ordinary measure outside the guidelines, I would think this sentence would be considered draconian, unnecessarily harsh and unreasonable."); *United States v. Hively*, 61 F.3d 1358, 1363, 1365 (8th Cir.1995) (Bright, J., concurring) ("[U]nwise sentencing policies which put men and women in prison for years, not only ruin lives . . . but also drain the American taxpayers. . . . [It is] time to call a halt to the unnecessary and expensive cost of putting people in prison for a long time based on the mistaken notion that such an effort will win 'The War on Drugs'. . . . The public needs to know that unnecessary, harsh and unreasonable drug sentences serve to waste billions of dollars without doing much good for society. We have an unreasonable system."); *United States v. Smiley*, 997 F.2d 475, 483 (8th Cir.1993) (Bright, J., dissenting) (suggesting that sentences imposed under the Guidelines where no rules of evidence apply and where sentencing judges often summarily approve probation officer recommendations seem to come from an *Alice in Wonderland* world where up is down and down is up); *United States v. Galloway*, 976 F.2d 414, 438 (8th Cir.1992) (Bright, J., dissenting) (comparing sentences imposed under the relevant conduct provisions of the Guidelines to an *Alice in Wonderland* world in which words lose their real meaning and down is up and up is down); *United States v. England*, 966 F.2d 403, 411 (8th Cir.1992) (Bright, J., concurring) ("In too many instances, the sentences directed by the guidelines waste the lives of men and women. . . . *It is time for a re-evaluation and change*."); *United States v. Simmons*, 964 F.2d 763, 778 (8th Cir.1992) (Bright, J.) (commenting that "[t]his case and other drug convictions like it demonstrate that, under the Sentencing Guidelines, district judges are obligated to sentence first-time drug offenders to extremely long prison terms under evidence which is often haphazardly produced and considered without regard to

gave notice to the parties of its intent to depart upward from the sentence dictated by the United States Sentencing Guidelines for the defendant's violation of 21 U.S.C. § 856, an offense that the court will describe for shorthand purposes as "maintaining a drug establishment." After giving the parties the opportunity to brief and argue the issue, the court has decided to impose a sentence that departs upward from the defendant's Guidelines sentence. As required by the recently-enacted PROTECT Act, this court will now "state[ ] with specificity" in a "written order of judgment" its reasons for departing upward from the applicable Guidelines sentence. *See* Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 (PROTECT Act), Pub.L. No. 108–21, § 401(c), 117 Stat. 650, 669 (2003) (amending 18 U.S.C. § 3553(c)); *United States v. Gonzales–Ortega,* 346 F.3d 800, 801 (8th Cir.2003); *United States v. Archambault,* 344 F.3d 732, 735 n. 3 (8th Cir.2003); *United States v. Aguilar–Lopez,* 329 F.3d 960, 962 (8th Cir.2003).

## I. INTRODUCTION

### A. Factual Background

#### 1. The charged offense

The factual background to the guilty plea of defendant Bradley Yahnke to a charge of "maintaining a drug establishment" in violation of 21 U.S.C. § 856 is drawn primarily from the Presentence Investigation Report (PSIR). The parties have made pertinent objections to the PSIR where noted.

The PSIR reflects that, on March 10, 2003, law enforcement officers conducted a consent search of a residence owned and occupied by Yahnke in Anamosa, Iowa, although the law enforcement officers apparently came armed with a search warrant for the premises. Yahnke led law enforcement officers to the upstairs bedroom, where items that could be used in the manufacture of methamphetamine were discovered. Specifically, officers located a one-gallon glass jar containing a bluish liquid, which tested basic. In the bottom of the jar, law enforcement officers observed a white powdery substance, which later tested positive for pseudoephedrine at the Division of Criminal Investigation (DCI) laboratory. Other items were located in a duffle bag lying next to a glass container in the bathroom. Those items consisted of a one-pound box of Morton salt, several brass nozzles, pipe fittings, cutting pliers, a white chemical suit, nitro rubber gloves, and one packaged lithium battery. The DCI laboratory reports reflect that the "methamphetamine lab" found at the defendant's residence could have produced 2 grams of actual "pure" methamphetamine. In addition to the methamphetamine-making paraphernalia, law enforcement officers found on Yahnke's person a red marijuana smoking device containing suspected marijuana, a cut straw that contained a white powder residue, and a small piece of tin foil.

Yahnke stated to law enforcement officers that a person named Denny Lathum had brought the items discovered in his bedroom and bathroom to his house the day before officers arrived to execute the search warrant. Law enforcement offi-

---

traditional rules of evidence. The guidelines procedure has chosen to bypass adherence to rules of evidence which have developed over hundreds of years in the common law tradition to assure reliability in factfinding."). However, the court finds that this case pres-

ents an exception and that a departure is entirely justified by underrepresentation of Yahnke's past criminal conduct and his potential for recidivism in his criminal history category as calculated under the Guidelines.

cers contend that Yahnke also admitted that Lathum had brought "dope" like this to Yahnke's residence on two occasions in the recent past and had left it there. Yahnke, however, contends that what he admitted was that Lathum had brought "stuff" to the house, meaning a bag or backpack, and that it was the law enforcement officers who used the word "dope," not Yahnke. Yahnke also admitted that he had received methamphetamine from Lathum when Lathum dropped off what turned out to be methamphetamine-making items at Yahnke's residence. In a sentencing memorandum filed October 29, 2003, Yahnke contends that he had no knowledge of exactly what Lathum was storing at his house, although he admits that he believed that the package had to do with drugs or some sort of contraband. He also argues that his activities were strictly limited to allowing the package to be stored at his house; he points out that he did not obtain precursor chemicals for methamphetamine making, nor did he participate in any "cooking" of methamphetamine, arrange customers to buy methamphetamine, or make sales of methamphetamine for Lathum out of his house.

Yahnke was arrested and later indicted for violating 21 U.S.C. § 856.

### 2. Yahnke's criminal history

The PSIR reflects that Yahnke had previously been convicted of second-degree murder in the Iowa District Court for Linn County. More specifically, the PSIR states that Yahnke, who was then eighteen years of age, was arrested on February 27, 1985, for the January 24, 1985, murder of Joan Marie Heims. As an explanation of the details of the murder conviction, the PSIR provides the following information, to which Yahnke has made no objection:

Charging documents obtained from the Linn County, Iowa, Clerk of Court re-garding the defendant's conviction for the above-noted violation show that the defendant was originally charged with Murder in the First Degree after the defendant was found in possession of the gun which killed Joan Marie Heims who was found dead on January 24, 1985 at her residence from a gun shot wound in Cedar Rapids, Iowa. Further investigation and ballistic testing revealed that the type of weapon had an unusual "rifling" in the barrel. The police recovered a rifle from the defendant's home which was found to be the murder weapon after testing. The defendant admitted that he alone had access to the murder weapon at the time of the offense. According to the Criminal Complaint, the defendant attempted to create an alibi by soliciting someone to give false statements as to his whereabouts. It is further reported that on or about January 24, 1985, the defendant called Kevin Doyle who resided with the victim. Arrangements were reportedly made for the defendant to pick up some marijuana from the victim and Kevin Doyle. The defendant admitted to law enforcement officials to stealing marijuana from the victim and made promises concerning the reimbursement for same. Additionally, marijuana was reported missing from the apartment of the victim and ammunition consistent with th[at] use[d] in the homicide was recovered from the defendant's home.

PSIR at 7, ¶ 32.

Although Yahnke was originally charged with first-degree murder, he was ultimately convicted only of second-degree murder. The PSIR does not indicate whether Yahnke pleaded guilty in exchange for a reduction in the charge, or whether he was convicted of the lesser offense after a jury or bench trial. Yahnke was sentenced on August 8, 1986, to imprisonment for up to

50 years for the murder, but he was paroled on May 12, 1993, after serving less than seven years of his sentence. The court observes that Iowa has since adopted an "eighty-five percent rule" pursuant to IOWA CODE §§ 902.12 and 903A.2(1)(b), under which a defendant convicted of an offense like Yahnke's would have been required to serve at least eighty-five percent of his sentence. In Yahnke's case, application of such an "eighty-five percent rule" would have kept Yahnke in prison until some time in 2028 or 2029.

The PSIR also reflects that Yahnke was convicted of parole violations on August 8, 1995, October 22, 2001, March 10, 2003, and March 11, 2003. The last parole violation remains pending. The PSIR provides the following details concerning these parole violations:

> Maureen Wolf, State of Iowa Parole Officer, informed the United States Probation Office that she had been supervising the defendant since he was placed on parole in 1993. While on parole, the defendant was placed at the Larry A. Nelson Center in Cedar Rapids, Iowa, in 1995 after he provided positive urinalysis tests for marijuana on June 19, 1995 and August 14, 1995. The defendant reportedly also violated his parole on October 22, 2001, when he provided a positive urinalysis test for marijuana. The defendant subsequently obtained substance abuse treatment. More recently, it has been alleged that the defendant violated his parole on March 10, 2003, after being charged with the instant offense of conviction, a state drug charge of possession, and the defendant having admitted to his state parole officer that he had used marijuana and methamphetamine. On March 10, 2003, a $10,000 bond was placed on the defendant by State of Iowa authorities regarding the defendant's parole violations. According to Jones County Jail Administrator Mike Elkin, the defendant met this bond and was released on March 11, 2003. On September 2, 2003, State Parole Officer Wolf informed the United States Probation Office that parole revocation proceedings remain pending and that once the defendant is sentenced on the instant federal offense of conviction, the defendant's parole will be revoked pursuant to Iowa law.

PSIR at 7–8, ¶ 33. Although Yahnke contends that the PSIR improperly reflects two separate parole violations on March 10, 2003, and March 11, 2003, he argues that he was actually charged with only one parole violation for the federal offense charged in this case. The probation officer has responded that Yahnke was charged with two parole violations in March 2003, one for his arrest on a state possession charge, and one for his arrest on the federal offense at issue here. The court does not believe that any determination on this dispute will make a difference to the sentence that the court will impose, because it is clear that Yahnke was charged with both state and federal offenses arising from the search of his residence on March 10, 2003, and that the state and federal offenses involve distinct conduct—possession of controlled substances, on the one hand, and maintaining a drug establishment, on the other—even though they arise from the same incident.

In addition, the PSIR reflects that Yahnke has admitted to other criminal conduct while on parole that did not result in either a parole violation, criminal charge, or conviction. Specifically, Yahnke admits that he had allowed Lathum to store "stuff," which he did suspect or should have suspected was drug paraphernalia, on at least two occasions prior to his arrest on the present charge of maintaining a drug establishment, and that he had received methamphetamine from Lathum

when Lathum dropped off what turned out to be methamphetamine-making items at Yahnke's residence. *See* PSIR at 4, ¶ 12. Yahnke also admitted to his state parole officer that he had used marijuana and methamphetamine prior to his arrest on March 10, 2003. *See* PSIR at 7–8, ¶ 33.

## B. Procedural Background

### 1. Yahnke's present charge and plea

A criminal complaint against Yahnke was filed in this court on March 11, 2003, and an indictment followed on March 24, 2003. The indictment charges Yahnke with knowingly opening, maintaining, managing, controlling, and making available for use, with or without compensation, and aiding and abetting the opening, maintaining, managing, controlling, and making available, any building, room, or enclosure, for the purpose of unlawfully manufacturing, storing, distributing, and using a controlled substance, including methamphetamine, in violation of 21 U.S.C. § 856 and 18 U.S.C. § 2. Again, this court will describe this offense, for shorthand purposes, as "maintaining a drug establishment." Yahnke was arraigned on this charge on April 1, 2003, at which time he pleaded not guilty.

However, on May 14, 2003, Yahnke appeared before a magistrate judge of this court and changed his plea to guilty to the charged offense. No plea agreement was involved in Yahnke's change of plea. The magistrate judge recommended that the court accept Yahnke's plea, and my colleague, United States District Court Judge Linda R. Reade, accepted that report and recommendation on June 2, 2003.

### 2. Sentencing recommendations and disputes

After Yahnke pleaded guilty, the United States Probation Office prepared a PSIR and the parties submitted objections to it. The PSIR computes Yahnke's criminal history as Category III, as the result of assessment of three criminal history points pursuant to U.S.S.G. § 4A1.1(a) for the second-degree murder conviction, and two additional criminal history points pursuant to U.S.S.G. § 4A1.1(d) for commission of the present federal offense while on parole for the state murder conviction. The PSIR also computes Yahnke's total offense level as 17, based on a base and adjusted offense level of 20, a two-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), and another one-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b). This computation results in a Guidelines sentencing range of 30 to 37 months. *See* U.S.S.G. Ch. 5, Pt. A (Sentencing Table).

Yahnke originally contended that his adjusted offense level should be 16, and his total offense level should consequently be 13, based on his contention that he is entitled to a four-level reduction pursuant to U.S.S.G. § 2D1.8(a)(2), because he had no "participation" in the underlying controlled substance offense. Yahnke's contentions would have resulted in a Guidelines sentencing range of 18 to 24 months. *See* U.S.S.G. Ch. 5, Pt. A (Sentencing Table). The United States disputed the applicability of a "no participation" reduction pursuant to U.S.S.G. § 2D1.8(a)(2), however, on the ground that Yahnke has admitted using methamphetamine involved in the underlying offense of manufacturing methamphetamine. Yahnke has since withdrawn his assertion that he is entitled to the reduction for "non-participation."

The parties submitted sentencing memoranda, Yahnke on October 28, 2003, and the United States on October 30, 2003. On November 3, 2003, this case was transferred to the undersigned for sentencing. The United States filed an amended sentencing memorandum on November 3, 2003, and Yahnke came on for sentencing

before the undersigned on November 4, 2003. However, Yahnke was not sentenced on that date. Instead, at the hearing on November 4, 2003, the court gave notice to the parties that it was considering an upward departure based on the court's impression that Yahnke's criminal history category under the Guidelines does not adequately reflect the seriousness of Yahnke's past criminal conduct or the likelihood that Yahnke will commit other crimes. At the request of Yahnke's counsel, the court granted a continuance for the parties to respond to the court's notice of a potential *sua sponte* upward departure, including the opportunity to submit briefs on the question. Yahnke's sentencing was eventually rescheduled for December 22, 2003.

Yahnke filed a Supplemental Sentencing Memorandum on December 19, 2003 (docket no. 37), to address the upward departure issues. The government also filed a Brief Regarding An Upward Departure on December 19, 2003 (docket no. 38). At the sentencing hearing on December 22, 2003, the United States was represented by Matthew J. Cole, Assistant United States Attorney in Cedar Rapids, Iowa. Defendant Yahnke was represented by Anne M. Laverty of Willey, O'Brien, Mullin, Laverty & Hanrahan, L.C., in Cedar Rapids, Iowa.

At the conclusion of the sentencing hearing, the court gave a brief oral summary of its rationale for departing upward from the Sentencing Guidelines and announced that it would sentence Yahnke to 57 months of imprisonment. The present Memorandum Opinion And Order Of Judgment On Sentencing provides a more complete, written statement of the court's rationale for the upward departure, as required by the PROTECT Act.

## II. LEGAL ANALYSIS

### A. Defendant's Guideline Sentence

Before the court can consider the question of whether or not it should depart upward from Yahnke's Guidelines sentence, the court must first determine what that Guidelines sentence would be. Generally, a defendant's Guidelines sentencing range is determined by finding the intersection of the defendant's criminal history category, read "horizontally" across the Guidelines Sentencing Table, and his offense level, read "vertically" down the Guidelines Sentencing Table. *See, e.g.,* U.S.S.G. §§ 1B1.1(g) & Ch.5, Pt. A.

Yahnke's Criminal History Category, as determined in the PSIR, is Category III. In this case, Yahnke was charged with knowingly opening, maintaining, managing, controlling, and making available for use a building, room, or enclosure, for the purpose of unlawfully manufacturing, storing, distributing, and using methamphetamine in violation of 21 U.S.C. § 856. His offense level pursuant to the guideline applicable to such an offense, U.S.S.G. § 2D1.8(a)(1), is "[t]he offense level from § 2D1.1 applicable to the underlying controlled substance offense." U.S.S.G. § 2D1.8(a)(1). That base offense level is 20, based on Yahnke's involvement with at least 2 grams but less than 3 grams of actual methamphetamine. *See* U.S.S.G. § 2D1.1(c) (Drug Quantity Table). Neither of the parties challenges the reduction of Yahnke's base offense level by three levels for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a) and (b). Therefore, Yahnke's total offense level under the Sentencing Guidelines is 17. As explained above, the intersection of Yahnke's Criminal History Category III and total offense level of 17 results in a Guidelines sentence of 30 to 37 months. *See* U.S.S.G. Ch. 5, Pt. A (Sentencing Table). It is this sentence from which the

court must determine whether it is proper to depart upward.

## B. Upward Departure

### 1. Arguments of the parties

In its December 19, 2003, Brief Regarding An Upward Departure, and again at the sentencing hearing, the government contended that it is appropriate for the court to depart upward from the Sentencing Guidelines in Yahnke's case. The government contends that Yahnke's Guidelines sentence fails to take into account either the likelihood that Yahnke will commit other crimes or the seriousness of the crimes that he has already committed. Indeed, the government contends that departures on both grounds are encouraged under the Guidelines pursuant to U.S.S.G. § 4A1.3. In support of its contention that departures on both grounds are appropriate, the government first points out that Yahnke's record is not that of a typical Category III offender, but instead reflects lenient treatment for his murder conviction and parole violations. The government also suggests that the record demonstrates Yahnke's "incorrigibility." The government suggested that the court would be well within its discretion to depart upward to Criminal History Category VI in this case.

In his Supplemental Sentencing Memorandum, however, Yahnke argues that no upward departure is appropriate, because the Sentencing Guidelines have already taken into account his prior conviction for murder. Had it been the intention of the Sentencing Commission to assess additional criminal history points for sentences in excess of one year and one month, Yahnke contends, the Sentencing Commission could easily have amended the Guildelines to do so. Moreover, Yahnke contends that his criminal history reflects only *one* arrest until the incident giving rise to the present charge, and that his parole violations were

so minor that they did not even result in revocation of his parole. He also contends that the incidents of misconduct in the last ten years are rare and isolated, so that they do not demonstrate "incorrigibility." Finally, if the court departs upward at all, Yahnke contends that the departure should be no more than one criminal history category.

### 2. Guidelines determination and authority to depart

#### a. The general scheme

■ Although a defendant's sentence under the United States Sentencing Guidelines is generally determined by considering the intersection of the defendant's criminal history category and his offense level, *see, e.g.,* U.S.S.G. §§ 1B1.1(g) & Ch.5, Pt. A, a district court may depart from the Guidelines sentence determined in this way, *if* the basis for the departure " 'advances the objectives set forth in [18 U.S.C. § ] 3553(a)(2),' 'is authorized under [18 U.S.C. § 3553(b)],' and 'is justified by the facts of the case.' " *See United States v. Flores,* 336 F.3d 760, 763 (8th Cir.2003) (quoting 18 U.S.C. § 3742(j)(1)); *accord United States v. Archambault,* 344 F.3d 732, 735 (8th Cir.2003) (citing *Flores*). "Horizontal departures are increases or decreases based on the relevant criminal history category applicable to the defendant," whereas "[v]ertical departures are increases or decreases based on the offense level." *United States v. Taylor,* 88 F.3d 938, 947 (11th Cir.1996). Because the court notified the parties that it was contemplating an upward departure on the ground that Yahnke's criminal history category did not reflect the seriousness of his past criminal conduct or the likelihood that he would commit other crimes, *see* U.S.S.G. § 4A1.3, what is at issue here is a "horizontal" departure.

Pursuant to the Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003 (PROTECT Act), Pub.L. No. 108–21, § 401, 117 Stat. 650 (2003) (amending 18 U.S.C. § 3553),

> "[W]hether the district court based a departure on a permissible factor ... is to be reviewed de novo." *United States v. Flores,* 336 F.3d 760, 763 (8th Cir. 2003) (citing [PROTECT Act, Pub.L. No. 108–21, § 401(d), 117 Stat. 650, 670 (2003) (amending 18 U.S.C. § 3742(e)])). Nevertheless, "[a] sentencing court's factual findings are still reviewable for clear error and the reasonableness of a permissible departure for abuse of discretion." *Id.*

*Archambault,* 344 F.3d at 735 (footnote omitted). The court will turn, next, to its determination of whether its proposed upward departure is based on a permissible factor, then to the questions of whether the facts in this case warrant such a departure, and if so, how much.

### b. The grounds for departure at issue here

In this case, the court forewarned the parties that it was considering an upward departure on the grounds that the defendant's "criminal history category [under the Guidelines] does not adequately reflect the seriousness of the defendant's past criminal conduct [and] the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3. The question is whether a departure on either ground " 'advances the objectives set forth in [18 U.S.C. § ] 3553(a)(2),' 'is authorized under [18 U.S.C. § 3553(b)],' and 'is justified by the facts of the case.' " *See Flores,* 336 F.3d at 763 (quoting 18 U.S.C. § 3742(j)(1)); *accord Archambault,* 344 F.3d at 735 (citing *Flores*).

In *United States v. Archambault,* 344 F.3d 732 (8th Cir.2003), the Eighth Circuit Court of Appeals recognized that an upward departure based on underrepresentation of the seriousness of a defendant's past criminal conduct by his criminal history category was "permissible" pursuant to 18 U.S.C. § 3742(j)(1). More specifically, the court in *Archambault* determined that such a departure meets the first requirement of § 3742(j)(1), advancement of objectives set forth in § 3553(a)(2), because "a district court advances 'the statutory sentencing objectives of "afford[ing] adequate deterrence to criminal conduct," § 3553(a)(2)(B) and "protect[ing] the public from further crimes of the defendant," § 3553(a)(2)(C),' when it takes into account past criminal conduct." *Archambault,* 344 F.3d at 735 (citing *Flores,* 336 F.3d at 764). Moreover, the court found that a departure on this basis satisfies the second requirement of § 3742(j)(1), authorization by § 3553(b)(1):

> Section 3553(b)(1) authorizes a court to depart based on a fact that was "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines ...." The Commission expressly provided for the departures the district court made [under U.S.S.G. § 4A1.3]. In so doing, the "Commission has acknowledged that it could not adequately account for all circumstances that might arise" in these situations, and thus a departure under such circumstances would be warranted. *Flores,* 336 F.3d at 764.

*Archambault,* 344 F.3d at 735.

Because U.S.S.G. § 4A1.3 authorizes a departure based on a determination that the defendant's criminal history category does not adequately reflect "the likelihood that the defendant will commit other crimes," as well as on the basis that the criminal history category does not adequately reflect "the seriousness of the defendant's past criminal conduct," it follows

that a departure based on a defendant's potential for recidivism likewise satisfies the first and second requirements under § 3742(j)(1). *Cf. id.* Indeed, the Eighth Circuit Court of Appeals has expressly held that potential for recidivism is also a permissible basis for an upward departure in light of the requirements of § 3742(j)(1) and the authorization for such a departure in U.S.S.G. § 4A1.3. *See Flores,* 336 F.3d at 763–64.

■ Thus, the key question in this case is whether an upward departure on the basis of either of the grounds stated in U.S.S.G. § 4A1.3 would also satisfy the third factor identified in § 3742(j)(1), which is whether the departure " 'is justified by the facts of the case.' " *Archambault,* 344 F.3d at 735 (quoting *Flores,* 336 F.3d at 764, in turn quoting § 3742(j)(1)). As to this third requirement, U.S.S.G. § 4A1.3 is expressly cast in terms of whether "the criminal history category ... adequately reflect[s] the *seriousness* of the defendant's past criminal conduct." U.S.S.G. § 4A1.3 (emphasis added). Also, "[t]he Guidelines do note that the nature of the prior offenses and not the sheer number of prior offenses 'is often more indicative of the seriousness of the defendant's criminal record.' " *United States v. Gonzales-Ortega,* 346 F.3d 800, 802 (8th Cir. 2003) (quoting U.S.S.G. § 4A1.3). Finally, a court may permissibly consider conduct from uncharged or dismissed offenses in its consideration of whether to depart pursuant to U.S.S.G. § 41A.3. *See Archambault,* 344 F.3d at 734; *Flores,* 336 F.3d at 764 (there was reliable information indicating that the defendant's criminal history category did not take into account the

seriousness of his past criminal conduct, because the criminal history category did not take into account serious conduct for which the defendant was arrested, but either not formally charged or convicted); *United States v. Leaf,* 306 F.3d 529, 533 (8th Cir.2002) (the district court properly considered several uncharged, violent offenses in deciding that it would depart upward from the Guidelines sentence); *United States v. Casey,* 158 F.3d 993, 996–97 (8th Cir.1998) ("[T]he Sentencing Guidelines unquestionably allow [a court] to consider conduct from uncharged or dismissed counts" to justify a departure to a more serious criminal history category).[2]

■ As to what facts warrant a departure based upon a defendant's potential for recidivism, *see* U.S.S.G. § 4A1.3 (the court may depart upward on the ground that the defendant's criminal history category "does not adequately reflect ... the likelihood that the defendant will commit other crimes"), the Eighth Circuit Court of Appeals has recognized that reliable information of a defendant's "inability to reform despite the leniency frequently afforded him" may warrant an upward departure. *See Flores,* 336 F.3d at 764; *accord United States v. Long Turkey,* 342 F.3d 856, 860–61 (8th Cir.2003) (an upward departure was appropriate where a defendant's lenient sentence, compared to the seriousness of the crime of rape, had failed to deter him from committing another rape a few years later). Moreover, a history of repeated crimes, even petty crimes, over a substantial period may justify an upward departure on the basis that the defendant is likely to commit other crimes. *See*

**2.** It is worth noting, in the interest of completeness, that "[c]onvictions that do not receive criminal history points due to their age may nonetheless be used to support an upward departure either if they are similar to the instant criminal conduct or if they are

dissimilar but serious offenses." *See United States v. Long Turkey,* 342 F.3d 856, 860 (8th Cir.2003) (citing USSG § 4A1.2, comment. (n.8)). However, there are no such "out of date" prior convictions at issue in this case.

*United States v. Chesborough,* 333 F.3d 872, 873–74 (8th Cir.2003) (the defendant's record of conviction of twenty crimes during the preceding forty-five years demonstrated "a high likelihood of recidivism" justifying an upward departure); *United States v. Agee,* 333 F.3d 864, 867 (8th Cir.2003) ("even offenses which are minor and dissimilar to the instant crime may serve as evidence of the likelihood of recidivism if they evince the defendant's incorrigibility").

The court's impression that an upward departure pursuant to U.S.S.G. § 4A1.3 might be justified in light of the facts in this case was premised on three aspects of Yahnke's criminal history: (1) his prior conviction for second-degree murder, on which he served less than seven years of a fifty-year sentence before being paroled; (2) several incidents of misconduct that resulted in parole violations; and (3) other admitted incidents of criminal conduct that did not result in either a parole violation, criminal charge, or conviction. The court will consider these three aspects of Yahnke's criminal history in turn.

### 3. Prior murder conviction

Surprisingly few decisions have considered whether a defendant's criminal history category adequately reflected the seriousness of the defendant's past conviction for murder. Therefore, the court will survey in turn each of the decisions that it has found to address this specific question.

#### a. Pertinent decisions

**i. United States v. Morrison.** In *United States v. Morrison,* 946 F.2d 484 (7th Cir.1991), *cert. denied sub nom., Anderson v. United States,* 506 U.S. 1039, 113 S.Ct. 826, 121 L.Ed.2d 696 (1992), the Seventh Circuit Court of Appeals reviewed a district court's upward departure from criminal history category II to criminal history category VI "because one of the prior convictions contributing to [the defendant's] criminal history score was a brutal, execution-style murder." *Morrison,* 946 F.2d at 495. The district court had concluded that criminal history category II " 'seriously underestimated' the severity of this crime." *Id.* (quoting the lower court). The Seventh Circuit Court of Appeals rejected the district court's determination, however, based on the following analysis:

The Sentencing Guidelines allow the district court to depart upward in calculating a defendant's criminal history score when "the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct." § 4A1.3. In reviewing a district court's decision to depart we must determine first whether the stated grounds for departure are legitimate and then whether the degree of departure was reasonable. The former inquiry is legal, and hence de novo in nature, whereas "we will give considerable leeway to a sentencing court's determination" in considering whether the degree of departure was appropriate. *United States v. Williams,* 901 F.2d 1394, 1396–97 (7th Cir.1990).

We turn to the first prong of the inquiry—whether the very nature of Anderson's prior criminal conviction was [a] legitimate reason for the district court's upward departure. Section 4A1.3 provides a non-exclusive list of situations where an upward departure may be warranted because "the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct." *The list's examples are all of a particular type: each suggests that an upward departure may be warranted when the defendant has committed crimes or conduct that the*

*criminal history calculation instructions, see § 4A1.1–2, fail specifically to consider. See, e.g.,* § 4A1.3(a) (foreign convictions); § 4A1.3(b) (consolidated sentence that is the consequence of a series of serious offenses should be weighted more heavily than other sentences for single offenses); § 4A1.3(c) (misconduct established by civil or administrative adjudication); § 4A1.3(e) (prior criminal conduct not resulting in a criminal conviction). In essence, § 4A1.3 is a backstop, designed to ensure that relevant conduct does not fall through unintended gaps in the Commission's broadly written calculation instructions.

*The district court's departure in this case was of a completely different kind than the examples set out above. The Sentencing Commission did not neglect to award criminal history points for murder; to the contrary, Anderson was assigned criminal history points for his conviction as mandated by § 4A1.1. The district court simply believed that the Guidelines did not impute to Anderson sufficient criminal history points for his heinous crime.* The court reasoned that by awarding a defendant three criminal history points for any offense resulting in a sentence of imprisonment exceeding one year and one month, § 4A1.1 inexplicably weighted murder no more than non-violent crimes such as forgery. *We believe the district court erred in departing upward for this reason.* As we suggest above, the examples set out in § 4A1.3 speak to a very different purpose behind the Guideline than the one to which it was put by the district court. The list is not intended to be exhaustive, but the principle of *ejusdem generis* nevertheless counsels that we be hesitant in allowing interpretations of § 4A1.3 that wander far afield of the examples contained therein. We are inclined to agree with the district court that the practice of weighing identically all prior sentences of a length greater than one year is somewhat indiscriminate, but to allow upward departures on the basis of the nature of a considered offense would render that very choice meaningless. *The Commission consciously chose to award defendants three criminal history points for every conviction of greater than one year, regardless of the nature of the underlying offense conduct. See § 4A1.1. To sanction the district court's upward departure would fly in the face of that choice, and invite sentencing courts to create their own weighing schemes for prior criminal convictions. However appalled we are by Anderson's criminal past, and however much we might believe that the Guidelines ought to be more discerning about the nature of a defendant's criminal past, we cannot find support for the district court's upward departure in the Guidelines.*

*Morrison,* 946 F.2d at 496 (emphasis added). Thus, even though U.S.S.G. § 4A1.3 invites an upward departure on the ground that the defendant's criminal history category "does not adequately reflect the *seriousness* of the defendant's past criminal conduct," *see* U.S.S.G. § 4A1.3 (emphasis added), the Seventh Circuit Court of Appeals rejected an upward departure under § 4A1.3 on the basis of the "heinousness" of a crime already considered in computing the defendant's criminal history category as compared to other offenses earning the same number of criminal history points. Rather, the Seventh Circuit Court of Appeals determined that a § 4A1.3 upward departure is appropriate only where "the defendant has committed crimes or conduct that the criminal history calculation instructions ... fail specifically to consider." *Morrison,* 946 F.2d at 496.

*ii. United States v. Henderson.* Subsequently, in *United States v. Henderson,* 993 F.2d 187 (9th Cir.1993), the Ninth Circuit Court of Appeals followed the reasoning in *Morrison* to reject an upward departure based on the extreme violence and seriousness of prior convictions, in that case, convictions for murder and child molestation. *See Henderson,* 993 F.2d at 188–89. The analysis by the court in *Henderson* consisted of the following:

The Seventh Circuit recently rejected an upward departure based on the nature of a defendant's prior criminal conduct. In *United States v. Morrison,* 946 F.2d 484 (7th Cir.1991), *cert. denied sub nom., Anderson v. United States,* 506 U.S. 1039, 113 S.Ct. 826, 121 L.Ed.2d 696 (1992), the district court based its upward departure on the fact that one of defendant's prior convictions was a brutal execution style murder. The Seventh Circuit ruled that this was an inappropriate ground for departure because the defendant already received criminal history points for the prior conviction under § 4A1.1.

"[A]n upward departure may be warranted when the defendant has committed crimes or conduct that the criminal history calculation instructions ... fail specifically to consider." *Morrison,* 946 F.2d at 496 (citations omitted); U.S.S.G. § 4A1.3. The nonexclusive list of upward departure situations in § 4A1.3 includes foreign convictions (§ 4A1.3(a)), consolidated sentences that are the consequence of a series of serious offenses (§ 4A1.3(b)), misconduct established by civil or administrative adjudication (§ 4A1.3(c)), defendant pending trial, sentencing, or appeal on another charge at time of instant offense (§ 4A1.3(d)), and prior criminal conduct not resulting in a conviction (§ 4A1.3(e)). *See United States v. Gayou,* 901 F.2d 746, 748 (9th Cir.1990) (affirming upward departure

based on grounds found in § 4A1.3(c), (d), and (e)).

The upward departure for the nature of Henderson's crimes does not fit into the category outlined above. The district court did not believe that the Sentencing Commission overlooked anything in awarding criminal history points; the district court believed that the Sentencing Commission did not assign enough points for these particular offenses. That belief may be morally correct. However, the Sentencing Commission chose to award defendants three criminal history points for every conviction leading to a sentence of greater than one year, regardless of the nature of the underlying offense conduct. *See Morrison,* 946 F.2d at 496.

*Henderson's convictions were counted in the calculation of his criminal history; they were already a factor adequately considered in the guidelines. While we understand the motivation for the district court's departure, the nature of Henderson's past crimes cannot serve as a proper basis for upward departure.*

*Henderson,* 993 F.2d at 189. Thus, *Henderson,* like *Morrison,* stands for the proposition that the "nature" of the prior conviction cannot justify an upward departure pursuant to U.S.S.G. § 4A1.3 where that prior conviction has already entered into the calculation of the defendant's criminal history category pursuant to U.S.S.G. § 4A1.1.

*iii. United States v. Rivera.* However, two decisions, one antedating *Morrison* and *Henderson,* and one later, appear to take a different view of the matter. The older of these two decisions is *United States v. Rivera,* 879 F.2d 1247 (5th Cir.), *cert. denied,* 493 U.S. 998, 110 S.Ct. 554, 107 L.Ed.2d 550 (1989). In *Rivera,* the Fifth Circuit Court of Appeals upheld an

upward departure based on a prior conviction for murder, as follows:

> The district court's articulated reason for departure was that category VI underrepresented Rivera's extensive criminal history. A district court may depart from the recommended range on the basis that "the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct...." *United States v. Fisher,* 868 F.2d 128, 129 (5th Cir.1989); *accord United States v. De Luna–Trujillo,* 868 F.2d 122, 124–25 (5th Cir.1989); Sentencing Guidelines § 4A1.3. The district court noted that the minimum level for category VI is thirteen points while Rivera's criminal history record totaled eighteen points—a full five points higher than the minimum level. In addition, section 4A1.3 of the Guidelines provides information which may be considered in determining whether the criminal history category is adequate. *Section 4A1.3(b) states that a district court may consider "prior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions." The district court specifically mentioned Rivera's conviction for murder, a sentence of seven years, as one of the reasons for departure. Under these circumstances, we find that the district court's departure based on Rivera's extensive past criminal conduct was reasonable.*

*Rivera,* 879 F.2d at 1255 (footnote omitted; emphasis added). Thus, contrary to *Morrison* and *Henderson,* the court in *Rivera* concluded that, where a prior sentence was for "substantially more than one year," an upward departure pursuant to U.S.S.G.

§ 4A1.3(b) may be justified, apparently notwithstanding the fact that the conviction has already been assessed criminal history points pursuant to U.S.S.G. § 4A1.1.

*iv. United States v. Grey Cloud.* Most recently, in *United States v. Grey Cloud,* 90 F.3d 322 (8th Cir.1996) (*per curiam*), our own Circuit Court of Appeals rejected a defendant's contention that a district court had improperly departed upward pursuant to U.S.S.G. § 4A1.3 based, in part, on the district court's determination that the defendant's "criminal history category did not adequately reflect his criminal history because [the defendant] had a prior murder conviction." *Grey Cloud,* 90 F.3d at 322.[3] The appellate court's summary rejection of defendant's counsel's challenge to the upward departure consisted of the following: "Because the district court did not err in finding that it had the authority to depart from the Guidelines sentencing range and that the facts of this case warranted a departure, and because the extent of the departure was reasonable, we reject counsel's claim." *Id.* Although the analysis of the pertinent issue does not make clear whether the appellate court would have upheld the upward departure based *solely* on the defendant's prior murder conviction, this decision appears to stand for the proposition that a prior murder conviction may justify an upward departure pursuant to U.S.S.G. § 4A1.3 on the ground that the defendant's criminal history category does not adequately reflect the prior murder conviction.

### b. Analysis

■ This court agrees that U.S.S.G. § 4A1.1(a) can be read to embody a policy

---

**3.** An additional ground for upward departure in *Grey Cloud* was "extreme conduct" in the charged offense, pursuant to U.S.S.G. § 5K2.8, based upon the fact that the defendant had dismembered the body of the victim of the murder with which he was then charged. *See Grey Cloud,* 90 F.3d at 322.

determination that *all* offenses, of whatever nature, punished by imprisonment exceeding one year and one month should be assessed the same 3 criminal history points. *See* U.S.S.G. § 4A1.1; *Henderson,* 993 F.2d at 189; *Morrison,* 946 F.2d at 496. The court also agrees that the specific examples listed in U.S.S.G. § 4A1.3 of conduct that might warrant an upward departure from the criminal history as computed pursuant U.S.S.G. §§ 4A1.1 and 4A1.2 may "suggest[ ] that an upward departure may be warranted when the defendant has committed crimes or conduct that the criminal history calculation instructions ... fail specifically to consider." *See Morrison,* 946 F.2d at 496. However, this court is not necessarily convinced that *Henderson* and *Morrison* make proper interpretations of U.S.S.G. § 4A1.3(b).

First, U.S.S.G. § 4A1.3(b) does not expressly refer only to a "*consolidated* sentence that is the consequence of a series of serious offenses" as a basis for upward departure, as that Guidelines provision is characterized in *Morrison. See id.* (emphasis added). Rather, § 4A1.3(b) states that information that may warrant an upward departure on the basis of underrepresentation of past criminal conduct includes "prior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions." *See* U.S.S.G. § 4A1.3(b). Thus, this express example of underrepresentation in U.S.S.G. § 4A1.3(b) seems to this court to indicate contemplation that the addition of only three criminal history points for "each prior sentence of imprisonment exceeding one year and one month" in U.S.S.G. § 4A1.1(a) may not "adequately reflect the seriousness of the defendant's past criminal conduct," where the actual sentence was well in excess of one year and one month. Indeed, that seems to be the reading of U.S.S.G. § 4A1.3(b) by the Fifth Circuit Court of

Appeals in *Rivera. See Rivera,* 879 F.2d at 1255 (holding that § 4A1.3(b) authorized an upward departure for underrepresentation of past criminal conduct in the case of a defendant who was convicted of murder and sentenced to seven years of imprisonment).

Moreover, the interpretation of U.S.S.G. § 4A1.3 in *Morrison* and *Henderson* as applying only "when the defendant has committed crimes or conduct that the criminal history calculation instructions ... fail specifically to consider," *see Morrison,* 946 F.2d at 496; *accord Henderson,* 993 F.2d at 187, seems to this court to read "*seriousness* of the defendant's past criminal conduct" in U.S.S.G. § 4A1.3 in too restrictive a manner or, indeed, to read it entirely out of the Guideline. On the other hand, in *Grey Cloud,* the Eighth Circuit Court of Appeals held that a prior conviction for murder warranted an upward departure pursuant to U.S.S.G. § 4A1.3. *See Grey Cloud,* 90 F.3d at 322. The court does not mean to suggest that U.S.S.G. § 4A1.3 warrants consideration of the "heinousness" of a prior conviction or the details or circumstances of the prior offense, because, among other things, those details have already supposedly been considered in fashioning the sentence for the prior conviction. However, the invitation to consider the "seriousness" of past criminal conduct as a basis for upward departure under U.S.S.G. § 4A1.3 *does* seem to this court to permit consideration of the categorical nature of the offense. Indeed, the Eighth Circuit Court of Appeals has observed that "[t]he Guidelines do note that *the nature of the prior offenses* and not the sheer number of prior offenses 'is often more indicative of the seriousness of the defendant's criminal record.'" *United States v. Gonzales–Ortega,* 346 F.3d 800, 802 (8th Cir.2003) (emphasis added) (quoting U.S.S.G. § 4A1.3).

Therefore, the court believes that it is proper to read U.S.S.G. § 4A1.3 to allow comparisons of "categories" of offenses on the basis of their "nature"—particularly, their "violence"—and the length of the sentence actually imposed. In such a comparison, violent crimes, such as murder, kidnapping, rape, arson, or armed robbery, for which the defendant was sentenced to a term of imprisonment substantially in excess of one year, would be considered "underrepresented" in the defendant's criminal history category, when compared with other offenses that might have earned a defendant a prior sentence "exceeding one year and one month," and hence three criminal history points pursuant to U.S.S.G. § 4A1.1(a), such as felony driving while intoxicated, a successive conviction for possession of a controlled substance, forgery, and other non-violent offenses for which sentences barely exceeding the term required for three criminal history points were actually imposed. Certainly, in this case, the fact that Yahnke was actually sentenced for up to fifty years imprisonment, even if he only actually served about seven years of that term, is indicative of the "seriousness" of his murder conviction, as is the fact that, under present Iowa law, Yahnke would have been required to serve eighty-five percent of his sentence, up to 42.5 years. *See* Iowa Code §§ 902.12 and 903A.2(1)(b).

In summary, the court concludes that it is authorized to consider a prior conviction for murder carrying a sentence for impris-onment substantially in excess of one year and one month as a ground for upward departure pursuant to U.S.S.G. § 4A1.3 on the ground that assessing only three criminal history points for such a conviction and sentence pursuant to U.S.S.G. § 4A1.1(a) "does not adequately reflect the seriousness of the defendant's past criminal conduct," and/or does not reflect that the defendant has a "prior sentence(s) of substantially more than one year imposed as a result of independent crimes committed on different occasions" within the meaning of U.S.S.G. § 4A1.3(b). Therefore, the court concludes that an upward departure is warranted in this case in light of Yahnke's prior conviction for second-degree murder and imprisonment on that conviction for almost seven years.[4]

### 4. *Incidents resulting in parole violations*

■ The court will also consider whether an upward departure—to the same or an additional extent—is required in light of uncharged offenses appearing in Yahnke's criminal history. The court will consider whether these prior uncharged offenses warrant an upward departure under U.S.S.G. § 4A1.3 on the ground that they show either (1) that the criminal history category does not adequately reflect the seriousness of Yahnke's past criminal conduct, or (2) that Yahnke is likely to commit other crimes, *i.e.*, whether they show that he has a potential for recidivism.

4. The court has also considered that U.S.S.G. § 4A1.3 contemplates an upward departure where "for appropriate reasons, such as co-operation in the prosecution of other defendants, [the defendant] had previously received an extremely lenient sentence for a serious offense." U.S.S.G. § 4A1.3. Plainly, Yahnke's actual imprisonment for only seven years on a second-degree murder conviction is extraordinarily "lenient" in light of the "eighty-five percent rule" that would be applicable to such a conviction now under Iowa law. *See* Iowa Code §§ 902.12 and 903A.2(1)(b). However, the present record is silent on whether the defendant's early parole was the result of his cooperation in the prosecution of other defendants, the result of parole board policy at the time of Yahnke's sentence and parole, or the result of an apparently "liberal" parole policy motivated by prison overcrowding or other concerns that had nothing to do directly with Yahnke.

### a. Seriousness of past criminal conduct

As explained above, a court may permissibly consider conduct from uncharged or dismissed offenses in its consideration of whether to depart pursuant to U.S.S.G. § 41A.3 on the basis that the defendant's criminal history category does not adequately reflect the seriousness of his past criminal conduct or the likelihood that he will commit other crimes. *See Archambault*, 344 F.3d at 734; *Flores*, 336 F.3d at 764; *Leaf*, 306 F.3d at 533; *Casey*, 158 F.3d at 996–97. The PSIR reflects that Yahnke was convicted of parole violations on August 8, 1995, October 22, 2001, March 10, 2003, and March 11, 2003, although the last two parole violations were both the result of his arrest after the search of his residence on March 10, 2003, where one parole violation is for arrest on a state charge and the other is for arrest on a federal charge. The PSIR also reflects that Yahnke was neither convicted of a crime nor assessed any additional criminal history points for the 1995 or 2001 parole violations, which preceded the events giving rise to the present federal charge. Moreover, the PSIR indicates that the 1995 parole violation actually was for two separate offenses, positive urinalysis tests for marijuana on June 19, 1995, and August 14, 1995, while the 2001 parole violation was for a single offense, another positive urinalysis test for marijuana. Thus, the PSIR provides "reliable information" of several offenses for which Yahnke has not been assessed any criminal history points. *See* U.S.S.G. §§ 4A1.3 (an upward departure must be based on "reliable information"), § 4A1.3(a) ("Such information may include, but is not limited to, information concerning ... prior sentence(s) not used in computing the criminal history category."), & § 4A1.3(e) ("Such information may include, but is not limited to, information concerning ... prior similar adult criminal conduct not resulting in a criminal conviction."). Pursuant to U.S.S.G. § 4A1.1, had each of those offenses resulted in a criminal conviction, each would have been assessed either one or two criminal history points, *see* U.S.S.G. §§ 4A1.1(b) ("Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).") & 4A1.1(c) ("Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this item."), for a total of at least three additional criminal history points. In the absence of such an assessment, the court finds that Yahnke's criminal history category does not adequately reflect the seriousness of his past criminal conduct. *See* U.S.S.G. § 4A1.3.

### b. Potential for recidivism

 Also as explained above, the Eighth Circuit Court of Appeals has recognized that an upward departure may be warranted on the basis of a defendant's potential for recidivism. *See Flores*, 336 F.3d at 763–64. Such a departure may be based, for example, on reliable information of a defendant's "inability to reform despite the leniency frequently afforded him," *see Flores*, 336 F.3d at 764; *accord Long Turkey*, 342 F.3d at 860–61, or on reliable information of a history of repeated crimes, even petty crimes. *See Chesborough*, 333 F.3d at 873–74; *Agee*, 333 F.3d at 867. In this case, it is clear that lenient treatment of the first two parole violations did not, ultimately, persuade Yahnke to reform. Rather, there appears to be a continuing trend of misconduct from the 2001 parole violation to the present. While Yahnke may not qualify as "incorrigible," he plainly has displayed conduct indicative of serious "backsliding" and continued disregard of drug laws and conditions of his parole. The court believes that the evidence of parole violations is suffi-

cient that the court can reasonably infer that no previous sanction has been effective in stopping Yahnke from committing crimes. *Cf. Agee*, 333 F.3d at 867 (viewing a string of crimes from 1974 through 2001 as making such an inference reasonable). This evidence is sufficient, and sufficiently reliable, the court concludes, to warrant an upward departure on the basis that Yahnke's criminal history category "does not adequately reflect . . . the likelihood that [he] will commit other crimes." U.S.S.G. § 4A1.3.

### 5. Other admitted criminal conduct

■ The court will also consider whether an upward departure can be based on other admitted incidents of criminal conduct that did not result in either a parole violation, criminal charge, or conviction. Those incidents, as the court noted above, include Yahnke's admission that he had allowed Lathum to store "stuff," which he did suspect or should have suspected was drug paraphernalia, on at least two occasions prior to his arrest on the present charge of maintaining a drug establishment, and that he had received methamphetamine from Lathum when Lathum dropped off what turned out to be methamphetamine-making items at Yahnke's residence. *See* PSIR at 4, ¶ 12. Yahnke also admitted to his state parole officer that he had used marijuana and methamphetamine prior to his arrest on March 10, 2003. *See* PSIR at 7–8, ¶ 33. Such drug use would constitute violations of both Iowa and federal criminal laws.

As to these incidents, as well as the parole violations, the PSIR provides "reliable information" of several offenses for which Yahnke has not been assessed any criminal history points. *See* U.S.S.G. §§ 4A1.3 (an upward departure must be based on "reliable information") & § 4A1.3(e) ("Such information may include,

but is not limited to, information concerning . . . prior similar adult criminal conduct not resulting in a criminal conviction."). Just as in the case of the parole violations discussed above, pursuant to U.S.S.G. § 4A1.1, had each of those offenses resulted in a criminal conviction, each would have been assessed either one or two criminal history points, *see* U.S.S.G. §§ 4A1.1(b) ("Add 2 points for each prior sentence of imprisonment of at least sixty days not counted in (a).") & 4A1.1(c) ("Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this item."), for a total of at least three additional criminal history points. In the absence of such an assessment, the court finds that Yahnke's criminal history category does not adequately reflect the seriousness of his past criminal conduct. *See* U.S.S.G. § 4A1.3.

The court finds that these admitted incidents of criminal conduct, which did not result in either a parole violation, criminal charge, or conviction, also demonstrate Yahnke's potential for recidivism. They further demonstrate that lenient treatment of parole violations did not, ultimately, persuade Yahnke to reform. Rather, they show that there is a continuing trend of misconduct from the 2001 parole violation to the present, including Yahnke's admission of further use of marijuana and methamphetamine on more than one occasion. This evidence also is indicative of serious "backsliding" and continued disregard of drug laws and conditions of parole on Yahnke's part. The court also believes that the evidence of admitted use of controlled substances in the recent past is sufficient that the court can reasonably infer that no previous sanction has been effective in stopping Yahnke from committing crimes. *Cf. Agee*, 333 F.3d at 867 (viewing a string of crimes from 1974 through 2001 as making such an inference reasonable). This evidence is sufficient,

and sufficiently reliable, the court concludes, to warrant an upward departure on the basis that Yahnke's criminal history category "does not adequately reflect ... the likelihood that [he] will commit other crimes." U.S.S.G. § 4A1.3.

#### 6. Extent of the departure

The Eighth Circuit Court of Appeals recently explained the way in which the district court is to determine the extent of a § 4A1.3 departure:

> The Sentencing Guidelines instruct that where a defendant's "criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes, the [district] court may consider imposing a sentence departing from the otherwise applicable guideline range." U.S.S.G. § 4A1.3. Normally, § 4A1.3 explains, such a departure is structured by moving horizontally within the Guidelines, from criminal history category III to IV, for example.

*United States v. Gonzales–Ortega,* 346 F.3d 800, 802 (8th Cir.2003) (also explaining that, when the defendant's criminal history is already Category VI, an upward departure pursuant to U.S.S.G. § 4A1.3 requires moving "vertically" down the offense levels in Category VI, in light of the "nature and extent" of the defendant's criminal history). Section 4A1.3 itself states,

> In considering a departure under this provision, the Commission intends that the court use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable. For example, if the court concludes that the defendant's criminal history category of III significantly under-represents the seriousness of the defendant's criminal history, and that the

seriousness of the defendant's criminal history most closely resembles that of most defendants with Criminal History Category IV, the court should look to the guideline range specified for a defendant with Criminal History Category IV to guide its departure.

U.S.S.G. § 4A1.3.

▮▮▮▮ If the district court determines that it is appropriate to depart upward by more than one criminal history category, "[t]he district court [i]s not required to 'specifically mention that it had considered each intermediate criminal history category.'" *United States v. Thornberg,* 326 F.3d 1023, 1027 (8th Cir.2003) (quoting *United States v. Collins,* 104 F.3d 143, 145 (8th Cir.1997)). "Instead, a court must adequately 'explain and support the departure.'" *Id.* (again quoting *Collins*); accord *United States v. Levi,* 229 F.3d 677, 679 ("[T]he court was not required to compare [the defendant] explicitly to other offenders in that category before departing upward," nor is the court required " 'to discuss each criminal history category it rejects en route to the category that it selects.' ") (quoting *Day, infra*); *United States v. Day,* 998 F.2d 622, 625 (8th Cir. 1993) ("[N]either the text of § 4A1.3 nor our precedents require a 'ritualistic exercise in which [the sentencing court] mechanically discusses each criminal history category it rejects en route to the category that it selects.' ") (quoting *United States v. Lambert,* 984 F.2d 658, 663 (5th Cir.1993) (*en banc*)), *cert. denied,* 511 U.S. 1130, 114 S.Ct. 2140, 128 L.Ed.2d 868 (1994). Again, the reasonableness of the court's ultimate departure for a permissible reason is reviewed for abuse of discretion. *Archambault,* 344 F.3d at 735.

Although it is not necessary for the court to do so, in light of the cases cited just above, the court finds that its rationale concerning the extent of its upward

departure in this case is best explained by discussing upward departures category-by-category, as the court moves "horizontally within the Guidelines, from criminal history category III to IV, for example," and perhaps beyond. *Gonzales–Ortega,* 346 F.3d at 802. In this case, the court concludes, first, that it is reasonable to depart upward one full criminal history category, that is, from Criminal History Category III to Criminal History Category IV, on the basis that Yahnke's criminal history category, as calculated in the PSIR, does not adequately reflect the seriousness of his past conviction for second-degree murder, in light of the nature of the offense, the fifty-year sentence imposed, and the seven-year sentence that Yahnke actually served.

Even if it were not permissible to depart upward on the basis of Yahnke's prior second-degree murder conviction, the court would still depart upward one full criminal history category on the basis that Yahnke's criminal history category, as calculated in the PSIR, does not adequately reflect his various parole violations. This is so when Yahnke's past parole violations are considered either in terms of reflecting the seriousness of his past criminal conduct—where he was assessed no criminal history points for the misconduct at issue in those parole violations—or in terms of the likelihood that he will commit other crimes—where the court finds that Yahnke's parole violations indicate that past sanctions have not stopped him from committing crimes. Indeed, assessing only one additional criminal history point for each of the failed urinalysis tests, *cf.* U.S.S.G. § 4A1.1(c) ("Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this item."), would raise Yahnke's criminal history points from five to eight, thus placing him squarely in Criminal History Category IV. *See* U.S.S.G. Ch. 5, Pt. A (Sentencing Table) (Criminal History Category IV requires 7 to 9 criminal history points). For a defendant already in Criminal History Category IV, where the court has placed Yahnke on the basis of his past conviction for second-degree murder, adding three additional criminal history points would place him squarely in Criminal History Category V. *See id.* (Criminal History Category V requires 10 to 12 criminal history points).

Similarly, the court finds that it would be appropriate to depart upward one full criminal history category on the basis that Yahnke's criminal history, as calculated in the PSIR, does not adequately reflect his admitted criminal conduct not resulting in a parole violation, criminal charge, or conviction. This is so when Yahnke's admitted past criminal conduct is considered either in terms of reflecting the seriousness of his past criminal conduct—where he was assessed no criminal history points for the misconduct at issue in his admitted drug use—or in terms of the likelihood that he will commit other crimes—where the court finds that Yahnke's admitted criminal conduct indicates that past sanctions have not stopped him from committing crimes. Indeed, assessing only one additional criminal history point for each of the admitted incidents of drug use, *cf.* U.S.S.G. § 4A1.1(c) ("Add 1 point for each prior sentence not counted in (a) or (b), up to a total of 4 points for this item."), would also raise Yahnke's criminal history points from five to eight, thus placing him squarely in Criminal History Category IV. *See* U.S.S.G. Ch. 5, Pt. A (Sentencing Table) (Criminal History Category IV requires 7 to 9 criminal history points). Again, for a defendant in Criminal History Category IV, where the court has already placed Yahnke on the basis of his past conviction for second-degree murder, adding three additional criminal history points would place him squarely in Criminal History Category V. *See id.* (Criminal Histo-

ry Category V requires 10 to 12 criminal history points).

■ Considering the combined effect of Yahnke's second-degree murder conviction, his past parole violations, and other admitted misconduct while on parole, the court finds that, ultimately, a reasonable upward departure would be *two* full criminal history categories, that is, from Criminal History Category III to Criminal History Category V, even though each of the *three* bases for upward departure would, individually, warrant an upward departure by a full criminal history category. The court is satisfied, based on its experience with the sentencing of criminal defendants, that the seriousness of Yahnke's criminal history most closely resembles that of most defendants with Criminal History Category V. *See* U.S.S.G. § 4A1.3 (the district court should be guided by such a comparison to determine the extent of an upward departure). Moreover, the court finds that Yahnke should be sentenced at the top end of the sentencing range for Criminal History Category V at Offense Level 17, which results in a sentence of 57 months.

Recognizing the possibility that one or more of the grounds for departing upward might be overturned on appeal, it is the intent of the court that, if any *two* of its grounds for departing upward are sustained, the upward departure based on those grounds would be *two* criminal history categories, from Criminal History Category III to Criminal History Category V, and that Yahnke should be sentenced at the top end of the sentencing range for Criminal History Category V at Offense Level 17, which results in a sentence of 57 months. If only *one* of its grounds for departing upward is sustained, that remaining ground would justify an upward departure from Criminal History Category III to Criminal History Category IV, and the court intends that Yahnke be sen-

tenced at the top end of the range for Criminal History Category IV at Offense Level 17, which would result in a sentence of 46 months. If all of its grounds for upward departure are overturned, it is the intent of the court that Yahnke be sentenced to the top end of Criminal History Category III at Offense Level 17, which would result in a sentence of 37 months.

### III. CONCLUSION AND ORDER OF JUDGMENT

Upon the foregoing, the court finds that Yahnke's Offense Level is 17, his Criminal History Category is III, and his Guidelines sentence, therefore, would be 30 to 37 months. The court also finds that, if only the Guidelines sentence is imposed, Yahnke should be sentenced at the top end of that range, to 37 months. However, the court finds that it is appropriate to depart upward from this Guidelines sentence pursuant to U.S.S.G. § 4A1.3 on the ground that Yahnke's criminal history category does not adequately reflect the seriousness of his past criminal conduct or the likelihood that he will commit other crimes, in light of his past conviction for second-degree murder—including the sentence of fifty years imposed for that offense and the seven-year sentence Yahnke actually served—as well as his past parole violations and his admitted uncharged criminal conduct, for which Yahnke received no criminal history points. The court finds that an upward departure from Criminal History Category III to Criminal History Category V is appropriate, that the sentencing range in Criminal History Category V at Offense Level 17 is 46 to 57 months, and that Yahnke should be sentenced at the top end of that range to 57 months imprisonment.

**IT IS SO ORDERED.**